Nolen et al. v. Harden et al.

<hr/>

## NOLEN ET AL V. HARDEN ET AL.

1. **WITNESSES :** *Husband and wife.*
   The public policy which forbids a husband or wife from testifying for or against each other, does not extend to collateral suits between third parties. In these a wife may testify as to transactions of her husband where she can do so without breach of matrimonial confidence. But even after coverture she cannot disclose facts obtained through matrimonial confidence.

2. **SAME :** *For and against administrators or guardians.*
   The parties excluded by the proviso to Sec. second of the schedule to Constitution of 1874, from testifying as to transactions or statements of testators, intestates and wards, are the executors, administrators and guardians on one hand and their opponents in the suit on the other, and do not include their co-defendants or other parties not pursuing nor pursued by the fiduciaries.

3. **PRACTICE IN SUPREME COURT :** *As to the facts in Chancery causes.*
   In Chancery causes the Supreme Court will, on appeal, sift the whole evidence and determine what the finding of the Chancellor should have been upon such of the evidence as was compe-

| 43 | 307 |
|----|-----|
| 59 | 96 |
| 43 | 307 |
| 66 | 302 |
| 43 | 307 |
| f68 | 256 |
| 43 | 307 |
| e72 | 309 |
| 43 | 307 |
| 78 | 212 |
| 43 | 307 |
| f 84 | 117 |
| 43 | 307 |
| 90 | 492 |

Nolen et al. v. Harden et al.

tent and proper; with due deference, however, to the decision of the Chancellor where the preponderance is nice.

4. GIFTS *inter vivos*: *Defined*.

Where a gift is intended *in presenti* and is accompanied with such delivery as the 'nature of the property will admit, and the circumstances and situation of the parties render reasonably possible, it operates at once, and as to the parties is irrevocable; and the delivery may be to a bailee as well as to the donee in person; but if there be only an intention to give and no delivery, it will be inchoate and imperfect and the property will not pass.

APPEAL from *Clark* Circuit Court in Chancery.

Hon. H. B. STUART Circuit Judge.

*Compton, Battle & Compton,* for appellants.

So much of the testimony of C. S. Hill, J. C. Pettus and C. A. Hightower as relates to transactions with or statements of M. O. Hill deceased should have been excluded. *Sec.* 2 *of Schedule to Const.* 1874. So much of the testimony of Mrs. C. A. Hightower as relates to the statements made by M. O. Hill in her presence and hearing, while she was his wife, should have been excluded. 1 *Greenl. on Ev. Sec.* 337–8; *Gantt's Dig., Sec.* 2482; *Acts* 1883, *page* 8.

In gifts *inter vivos* and *causa mortis*, there must be an actual delivery. The delivery must be according to the nature of the thing, and must be the true and effective way of obtaining the command and dominion of the subject of the gift.

The donor must deliver the property and part with all present and future dominion over it. There must be a substantial, tangible and visible change of possession to the donee. *Gantt's Dig., Sec.* 2956; 2 *Kent. Com., Marg. p.* 438–9; 1 *Nott & McCon'l (S. C.)* 239; *Cutting v. Gilman,* 41 *N. H.,* 150; 31 *Me.,* 422; 9 *Vesey,* 1; 7 *Taunt.,* 224; 2 *Vesey, Sr.,* 431; 109 *Mass.,* 541; 2 *B. & Ald.,* 551. See also 35 *Barb.,* 33.

The testimony shows that Hill never parted with his dominion over the money, and the gift was never consummated.

*Smoote & McRae* for appellee, C. S. Hill.

1. Whether C. S. Hill was a competent witness as to conversations and transactions with M. O. Hill deceased, he certainly was as to all other facts. *Const.* 1874, *Sch. Sec.* 2.

2. Mrs. Hightower was competent as to all facts not coming to her knowledge by reason of her relation as wife. 1 *Greenl. Ev., Sec.* 383 *and note.*

3. Pettus is not within the exception. He is merely a nominal party. No judgment can be rendered against him. He is clearly competent. 37 *Ark.,* 195; 8 *Com.,* 254; 5 *Dana,* 499; 2 *A. K. Marsh.,* 566.

4. The evidence clearly shows a gift *inter vivos,* and the money never became part of the estate. 11 *Ark.,* 249; 14 *Id.,* 304; 35 *Id.,* 304; 37 *Id.,* 483; 8 *Id.,* 83; 10 *Id.,* 211; 17 *Am. Law Reg.,* 7 & 73.

*R. H. Baugh, pro se.*

Notwithstanding the provisions of *Section Two* (2) *of the Schedule to the Constitution of* 1874, and the decisions of this court reported in the 26 *Ark.,* 476; 30 *Ark.,* 285 and 32 *Ark.,* 337, the defendant, J. C. Pettus, is unquestionably a competent witness in this cause, and his deposition was properly considered by the Chancellor in the court below. 37 *Ark.,* 195; *Bird et al v. Jones et al; Bonnett v. Stowell,* 37 *Vermont; Ford v. Sproule,* 2 *A. K. Marshall,* 528; 8 *Conn.,* 254; 11 *Conn.,* 522; 20 *American Decisions,* 100 *and note on p.* 109; 12 *Pickering,* 307; 30 *American Dec.,* 689; *see also Sec.,* 22, *Art.* 7, *Constitution* 1868.

The right to dispose of property honestly acquired, conformably with law, is before and higher than any Constitu-

Noled et al. v. Harden et al.

tional sanction.  *Constitution* 1874, *Declaration of Rights;*
*Parsons on Contracts, Vol. I, p.* 234.

And the grantor's clear intention in an effort to exercise
this right while living, ought to be, after his decease, if not
largely aided and abetted by Courts of Chancery, at least re-
garded by them with marked favor.  *Bond v. Bunting,* 78
*Pennsylvania; Digest American Decisions, Vol.* 1 *to* 30, *p.*
103, *Sections* 109, 115, 117; 6 *Conn.,* 111; 2 *Gill and John-*
*son,* 36.

There was a perfect technical delivery from the donor to
Pettus as the trustee of his infant daughter, the donee.    11
*Ark.,* 265, 266 ; 14 *Ark.,* 304; 35 *Ark.,* 195, 304, 315;
*Cooper v. Burr,* 45 *Barb.;* 4 *Leigh,* 333.

Such delivery to and the acceptance by Pettus of the fund
in question, perfects a title thereto in the infant donee, even
though its subsequent possession was in the parent of the
donee.    8 *Ark.,* 83, 107 ; 10 *Ark.* 211, 224; 1 *Nott & McCord,*
237, 592 ; 41 *Iowa,* 334 ; 15 *Wend.,* 548; *Roberts Appeal,*
85 *Penna. St.;* 2 *Kent* 445.

And title once vesting in donee, if a gift *inter vivos,* the
donation was irrevocable, and title yet remains in donee.    2
*Kent,* 440; 17 *American Law Register, pp.* 7 *and* 73, *where*
*authorities on this point are collated.*

The gift was *inter vivos :* 1 *Parsons Contract,* 234, *et seq.;*
17 *American Law Register, p.* 1, *et seq.; Gardner v. Meritt,*
32 *Md.*  And was not, *causa mortis : Rhodes v. Childs,* 64
*Pennsylvania ;* 14 *Cent. Law Journal,* 362 ; 23 *American De-*
*cisions,* 191.

But viewed as being either one or the other, the transac-
tion constitutes a perfect gift.    1 *Parsons Contract, p.* 236 ;
5 *American Decisions,* 593 ; 9 *American Decisions,* 593 ; 23
*American Decisions,* 191, 597, 604 ; 11 *Cent. Law Journal,*
414.

If substantial justice has been done in this cause the judg-

ment of the court below will stand. 34 *Ark.*, 94.

EAKIN, J. On the 2nd day of January 1882, Dora O. Baugh, with her husband, R. H. Baugh, sued J. C. Pettus and C. S. Hill on a bill of exchange for $1,875, drawn by them in favor of plaintiffs, on the 10th, of August, 1881, upon Wolf, Bro. & Bath, of St. Louis, payable by the 1st of December following, and which had been protested for non-acceptance.

They answered, showing, that Milton A. Hill had died intestate in Clark county, about the 2nd of July, 1876, leaving a widow, *Cynthia A.* Hill, who had since intermarried with Wm. H. Hightower ; also children, to-wit: *Laura A.* (wife of Washington Harden); *Adella* Nolen (a widow) *Loretta H.* (wife of A. C. Rhodes) ; *Josephine A.* (wife of A. W. Cagle) ; *Sevra Ann A.* (wife of Oliver G. Cagle) ; and the plaintiff, *Dora O.* (wife of R. H. Baugh).

Further, that about four or five months before his death, said Milton had given to defendant Pettus, to be held and used, for his daughter Dora, about $2000 in gold pieces of $20, tied up in a bag, saying that he desired her to have that gold extra, to be estimated as no part of the estate, but with the intention that said Dora should share equally with the others, in whatever estate he might leave at his death. That Pettus left the sack of gold with Milton O.'s wife, Cynthia, for safe-keeping, and that she sent it to him after Milton's death. That afterwards Dora intermarried with Baugh, and defendant Pettus paid to Baugh a portion of said money, the balance being then lent out. For this balance, the draft in suit was given, but before it came due, the other distributees made a claim on him for the money, and threatened suit, whereupon he stopped the payment.

They assert that the other heirs of Milton O., to-wit: the said Laura, Adella, Loretta, Josephine, and Sevra Ann, with their husbands are about to bring suit for an equal share of

this money against defendant Pettus, and perhaps, defendant C. S. Hill also. Defendants are uncertain of the issue of such a suit, upon the law, and such evidence as might be adduced, and say that if this suit should proceed to judgment at law, the defendant Pettus would stand in danger of double payment. They show, further, that defendant C. S. Hill and Wash. Harden had, in 1876, been appointed administrators of the estate of said Milton, and had fully closed the same, and that said Hill had afterwards been appointed guardian of said Dora.

They pray that this their answer may be taken as a bill of interpleader against the plaintiffs and the other heirs, and the widow; that their equities may be adjusted amongst themselves and those not entitled be enjoined from suing further.

This answer was filed on the 30th day of January, 1882, and was accompanied with a tender and payment into court, of the money in controversy, and a motion to transfer to the equity docket.

On the 8th of May, 1882, the court sustained a general demurrer to the answer, and overruled the motion to transfer. Leave to amend the answer and cross complaint was granted till the next term.

It appears that before the next term a suit in equity had been already begun, by Adella, Josephine, Loretta, and Sevra Ann, against Laura and her husband, Wash Harden, Dora, Pettus, C. S. Hill and Wash Harden as administrators, and the widow Mrs. Hightower. The object of the bill is to set aside the settlement made by Hill and Harden as administrators, charging fraud in not including the sum in controversy as part of the estate of Milton O. The prayer was that the administrators be compelled to divide the sum amongst all the distributees and for general relief.

The defendants in the suit at law, in amending their an-

Nolen et al. v. Harden et al.

swer, set forth these proceedings by way of supplement, reiterated the facts going to show that the sum of money belonged to Dora, and prayed that the law suit might be transferred to the equity docket, and consolidated with the suit there pending regarding the same sum, in order that all parties in interest might be bound by one decree, and for general relief.

A demurrer to this supplemental answer and cross complaint was overruled, and the prayer to transfer to equity and consolidate, was granted. The cause then proceeded on the equity docket as consolidated.

It may be noticed, in passing, that in the equity bill, although C. S. Hill and Wash Harden are described as late administrators of the estate of Milton O. Hill, and fraud is alleged against them in that character, and the prayer is that they be compelled to pay over to the distributees their respective shares of the disputed sum, yet no relief is sought against their sureties on their bond, and the process of summons was directed against them individually. No relief is sought against the estate of Milton O. Hill, which is conceded to have been fully administered and, in all other respects, closed; nor is it sought to make them any further chargeable in the Probate Court, with the sum in question, upon a new and reformed settlement, nor to compel them to any further action in their character as administrators. It is a suit to hold them personally chargeable to the several distributees, on account of past misfeasance as administrators.

C. S. Hill and Pettus answered the bill in equity, reiterating the matter formerly pleaded. Cynthia Hightower and Dora O. Baugh also filed a joint answer to the same effect. All these set up and rely upon the gift to Dora as valid, and take grounds that it was not part of the estate, and there had been no fraud in the administration.

Upon hearing of the consolidated suits, upon the pleadings,

record entries and depositions, the Chancellor found that the gift of the money to Dora O. Baugh, from her father Milton O. Hill, was a complete and executed gift, *inter vivos*, and that it did not remain as a part of his estate. The complaint in equity was therefore dismissed at the cost of the complainants, who prayed, and were granted, an appeal.

Further, he found that the draft upon which the suit at law had been brought was given for the unpaid residue of money placed in the hands of Pettus for Dora, and that there had been since paid upon it the sum of $153.30, leaving a balance of $1734.80 which had been tendered and paid into court, in full, by Pettus and Hill. They were ordered to pay the costs of the action at law, and the costs of transferring it to the equity side. It was agreed in open court by all the parties that the sum of $578.25 be paid out to Cynthia A. Hightower (who had been divorced from her last husband) to be received for, and paid to, Dora Baugh, but to go in satisfaction *pro tanto* of said Cynthia's right of dower in the sum, in the event that the decree should be reversed in this court, and the fund adjudged to belong to the estate, or in case of affirmance, to go in discharge of so much of the claim of Dora on the fund. By like consent, a decree was entered to that effect, and it was further provided that pending the suit the remainder of the fund should be loaned at interest by the clerk.

The appeal, besides some question of the competency of witnesses, presents to us only the single point, whether or not, under the circumstances, the intended gift to Dora by her father was actually accomplished, or exisisted only in intention up to the time of his death. In the latter case the complainants should have succeeded in their suit.

1. WIT-
NESSES.
Husband
and Wife. Mrs. Cynthia A. Hightower, the mother of Dora, called by the defendants, was objected to by complainants, before her examination, because she had been the wife of Milton O.

at the time of the transactisns in question,which objection was noted in the deposition, and she proceded. The objection was premature and altogether too sweeping. Her husband was not a party to the suit, and she was not called to testify for or against him, or his interests. The issue was solely between Dora and her five sisters, with regard to money which had once been the property of her husband. The public policy which precludes a husband or wife from testifying for or against each other, does not extend to collateral suits between third parties. In such suits she may testify as to transactions in which her husband bore a part, in cases where she may do so without breach of matrimonial confidence. There is, indeed, an objection which may be made, not to her competency as a witness in the suit, but to the subject matter of particular evidence. She may not, even after coverture, disclose matters which come to her knowledge through matrimonial confidence, but this does not preclude her from testifying between third parties, as to matters not peculiarly o matrimonial confidence, but which others may have learned as readily as herself. We observe in her testimony some communications regarding the intentions of Milton O. towards Dora, made before the assumed gift, which seems of a confidential nature, but they were not specially excepted to, and were not of much weight. The essential part of her testimony regarded the circumstances of the gift, which took place in the presence of a third party made bailee for Dora; and her own conduct in procuring the bag of gold, putting it in her husband's hands, witnessing its delivery to the bailee, and her receiving it herself from the bailee for safekeeping; her keeping it in her own possession, and finally delivering it to Pettus. There was nothing of matrimonial confidence in this. It was all in the presence of Pettus also, and was such service and attention as might as naturally have been rendered by a sick nurse, or any other female relative. It was testimony of facts witnessed and conversations over-

heard *inter alios,* without any indication of an intention to
repose in her any such special confidence, as might not be
extended to any trusted friend of the family who might have
been present. Indeed, Mrs. Pettus, as elsewhere appears,
insisted that he should make the facts known to others, not
of his family, and he did make them known to his brother,
C. S. Hill. In all important matters, her testimony was com-
petent, and we may well presume the Chancellor gave no
weight to what was not strictly so. It was not necessary
that he should do so, to determine the nature of the transac-
tion. No declarations of intention amount to anything in
themselves unless carried out in act.

As to wife's competency, see *Greenleaf on Ev. Vol. I, Secs.*
254, 338 *and* 342. Mr. Greenleaf says the policy is analo-
gous to that which excludes confidential communications
made by a client to his attorney. This policy does not ren-
der an attorney incompetent to testify with regard to commu-
nications or actions of the client, of which any other person,
if there, would have been equally cognizant, or " where the
matter communicated is not, in its nature, private, and could,
in no sense, be termed the subject of confidential disclosure."
*Ib., Sec.* 244. The present tendency of courts is to enlarge
rather than restrict the admissibility of evidence, especially
in equity cases, where the Chancellor may sift the chaff from
the wheat.

2. SAME :
For and
against tes-
tators, in-
testated &c.

" Objections were made to her testimony, together with that
of C. S. Hill and J. C. Pettus, because it related to transac-
tions with the deceased, Milton O. Hill, and the said C. S.
Hill together with Wash Harden were parties defendant as
his administrators.

The second section of the schedule to the Constitution of
1874, after declaring generally that no person shall be in-
competent to testify because he may be a party to or inter-
ested in, a suit, provides that "in actions by or against

Nolen et al. v. Harden et al.

executors, administrators or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other, as to any transactions with or statements of the testator, intestate or ward, unless called to testify thereto by the opposite party."

The *parties* here referred to must mean the executors, administrators and guardians on one hand, and persons in antagonism with them on the other, claiming adverse rights against the fiduciary, or defending against claims made by him. Neither its reason, nor its policy can be extended to co-defendants, or other parties, not pursuing nor pursued by the fiduciary. It is not true that a decree in favor of complainants would necessarily be followed by a decree in favor of the administrators against Pettus. They make no such prayer, and courts of equity do not grant relief unasked. There is no antagonism between Mrs. Hightower and the administrators. She can not on the pleadings have any judgment against them nor they against her. Her conditional acceptance of dower was by agreement and wholly for her daughter's benefit. It is outside the pleadings, and could not have been decreed without consent. Her answer prayed no cross relief against her co-defendants who were administrators, or had been.

The case of C. S. Hill is not so clear. He had been administrator, and is described, but not sued, as such. But the suit is not against the estate which he represented. It is in form against him and his co-administrator to hold them personally responsible for a specific sum of money. The real contest was between Dora and her sisters, concerning a particular fund already in court to be distributed. Judgment for or against him would not affect the estate which he had represented, nor would it effect him personally beyond costs, which could be but trifling, since the money had been brought early into court, and was there for the court to distribute in

Nolen et al. v. Harden et al.

any case. It is very doubtful whether the spirit of the law would preclude him from testifying for either side of the real contestants, by disclosing conversations and transactions with the deceased. It is quite obvious that the Constitutional provision was primarily directed to suits by or against the estate of deceased persons, &c., as between the estate and strangers, whereby the estate itself might be augmented or diminished in the hands of the representative. Its policy would not extend to contests between distributees about the division of a fund. *Bird v. Jones* 38 *Ark.*

3. Practice in Supreme Court: As to findings of Chancellor.

It is not, here, necessary to decide this point. In Chancery cases the admissibility or incompetency of evidence is not so strictly scrutinized as in cases tried by jury. For this court can itself sift the whole evidence and determine what the finding of the Chancellor *should* have been, upon such evidence as was competent and proper. The Chancellor below, and this court on appeal, are judges of law *and* fact. We can never say what the verdict of a jury should have been upon proper evidence, for that would be to assume the determination of facts. They might in any case, but for improper evidence, have brought in a different verdict, and this court cannot say for the jury that the verdict must stand on account of the sufficiency of proper evidence. We cannot know that a jury would have so concluded, and their province to find facts is exclusive. In Chancery cases we review both law and fact, with a due deference to the decision of the Chancellor where the balance is nice. We may, here, purge the mass of evidence, and reach conclusions supported only by that which is competent and credible.

4. GIFTS: *Inter vivos* defined.

Adopting the safest course, and discarding wholly the evidence of C. S. Hill and so much of Mrs. Hightower's as may savor of matrimonial confidence the proof is ample to show : That Milton O. Hill, had collected and kept apart in a sack over $2000 in gold pieces; that he solemnly and earnestly gave it into the hands of a neighbor and friend to be held

Nolen et al. v. Harden et al.

and used for his daughter Dora, a girl of 7 or 8 years of age unfit to receive it for herself; that he endeavored to retain no further control of it, expressing the gift in absolute terms, as intending it to operate *in presenti*; that the friend recieved it into his hands, *bona fide*, with the intention of accepting the trust; that he found it inconvenient to carry away, and asked the wife of the donor to keep it for him until he should call, or send for it; that the donor observed the transaction and cautioned his wife to deliver it before his death; that she kept it separate under her own control; that the donor died afterwards away from home, and his wife sent the same sack to the bailee after his death.

All the adjudications concerning the validity or invalidity of gifts *inter vivos*, depend upon a single principle clear enough in itself, but sometimes difficult in its application. Apparent discrepancies have resulted, in most cases, from attempts to make gifts *in presenti* of choses in action by making formal delivery of the evidences and still retaining some sort of control; which in some cases have been held valid, and in others not—each acording to the views which the courts have taken as to the nature of the transaction, whether it be inchoate only and expressive of future intention, or whether it be complete *in presenti*—and so intended. Where the thing given has been substantial property the cases are clearer.

The principle is this : that if the gift be *intended in presenti* and be accompanied with such delivery as the nature of the property will admit, and the circumstances and situation of the parties render reasonably possible, it operates at once, and as between the parties becomes irrevocable. Such delivery may be made to a bailee, as effectually as to the donee in person. Upon the other hand, if there be only an intention to give and no delivery, it will be inchoate and incomplete, however strong the expression of intention may be; and the

property does not pass. One is bound by his acts, but without consideration, he is not bound to carry out his voluntary intentions, however firmly or earnestly he may express them.

In this case the subject matter of the gift was a bag of coin, inconvenient to be carried; the donee was a young girl incompetent from age to receive and take care of it; the donor, an invalid, incapable of active business. He selects a trusted friend and neighbor and delivers the sack to him for his daughter, requesting him to keep it for her benefit, and declaring it a gift, absolutely, without condition or reservation. It is difficult to conceive a mode of doing it more effectually under all the surroundings. We may not question his motives, nor criticise his conduct. He had a right to do what he would with his own. The gift was complete when the sack was delivered and accepted as the property of Dora. What happened afterwards was of no consequence. It was irrevocable The bailee had the right to request the mother to keep it for him. It is not a matter of any significance, if it were clearly shown that the donor resumed the control of it at any time afterwards. He had no right to do so. Neither the donee, who could not act *sui juris*, nor the bailee, nor the mother could give him that right. It was no longer his property, and did not become part of his estate, because it was under his roof when he died.

There was no error in the decree. Let it be affirmed and the case be remanded for final adjustment according to its terms.