# 555, Incorporated, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 18640.   Promulgated November 20, 1950.

*E. Chas. Eichenbaum, Esq.*, for the petitioner.
*John W. Alexander, Esq.*, for the respondent.

674

676

OPINION.

BLACK, *Judge:* The only question in this proceeding is whether petitioner is entitled to a deduction of $33,177.15 claimed by petitioner as a contribution to an employees' pension trust in the taxable year ended September 30, 1943.

Respondent contends that petitioner's contribution is not deductible because: (1) it was not a contribution to a pension *plan* under section 23 (p) of the Internal Revenue Code, and (2) it was not a contribution paid to an *employees' trust* exempt under section 165 (a) and in effect during the taxable year ended September 30, 1943. Petitioner contends that the contribution is deductible because there was a plan on September 30, 1943, and the employees' trust was exempt under section 165 (a).

In accordance with the Revenue Act of 1942 all contributions of an employer to an employees' pension plan must now come within section 23 (p) of the Internal Revenue Code or the contributions are not deductible. *Tavannes Watch Co.* v. *Commissioner*, 176 Fed. (2d) 211, and *Times Publishing Co.*, 13 T. C. 329, affd. (CA-3), 184 Fed. (2d) 376. Section 23 (p) provides that contributions to an employees' pension plan are deductible if made to an employees' trust exempt under section 165 (a) of the Internal Revenue Code, or if to a trust not so exempt the individual employee must receive a non-forfeitable right in the contribution. *Times Publishing Co., supra.* Petitioner herein does not contend that each individual employee received a nonforfeitable right but rather that the contribution was to an employees' trust exempt under section 165 (a).

At the time of petitioner's contribution it was not necessary that the employees' trust meet all the requirements of section 165 (a), for

the Revenue Act of 1942 as finally amended by Section 2 of Public Law No. 511, December 20, 1944, provides as follows:

1942 ACT, SEC. 162. PENSION TRUSTS.

(d) TAXABLE YEARS TO WHICH AMENDMENTS APPLICABLE.—The amendments made by this section shall be applicable as to both the employer and employees only with respect to taxable years of the employer beginning after December 31, 1941, except that—

\* \* \* \* \* \* \*

(2) A stock, pension, profit-sharing, or annuity plan—

(A) put into effect after September 1, 1942, and prior to January 1, 1945, shall be considered as satisfying the requirements of section 165 (a), (3), (4), (5), and (6) for the period beginning with the date on which it was put into effect and ending with June 30, 1945, if all provisions of the plan which are necessary to satisfy such requirements are in effect by the end of such period and have been made effective for all purposes with respect to the portion of such period after December 31, 1943;

Petitioner does not contend that on September 30, 1943, the trust complied with the provisions of section 165 (a) (3), (4), (5), and (6). However as shown above such compliance was not necessary if ultimate compliance with these subsections was within the grace period. Respondent's requested findings of fact concede that within the allowed period, the trust was in complete conformance with section 165 (a); however, respondent contends that on September 30, 1943, even conceding a valid plan in existence under section 23 (p), the trust did not comply with subsections (1) and (2) of section 165 (a) [1] of the Internal Revenue Code which subsections were not within the grace period above referred to provided by section 162 (d) of the Revenue Act of 1942.

Petitioner argues, and we think rightly so, that on September 30, 1943, there was not only a pension plan but an employees' trust which met the requirements of section 23 (p) and subsections (1) and (2) of section 165 (a), when the retroactive provisions of section 23 (p) (1) (E) are considered. It is perfectly true that petitioner made no contribution to the tentative pension trust created September 29, 1943, at the time it was created, but it did make such a contribution

---

[1] SEC. 165. EMPLOYEES' TRUSTS.

(a) EXEMPTION FROM TAX.—A trust forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall not be taxable under this supplement and no other provision of this supplement shall apply with respect to such trust or to its beneficiary—

(1) if contributions are made to the trust by such employer, or employees, or both, for the purpose of distributing to such employees or their beneficiaries the corpus and income of the fund accumulated by the trust in accordance with such plan;

(2) if under the trust instrument it is impossible, at any time prior to the satisfaction of all liabilities with respect to employees and their beneficiaries under the trust, for any part of the corpus or income to be (within the taxable year or thereafter) used for. or diverted to, purposes other than for the exclusive benefit of his employees or their beneficiaries;

in escrow on November 27, 1943, and this was within the 60-day grace period granted by section 23 (p) (1) (E).

Having seen that there was a clearly designated trust *res* there remains to be seen whether or not there was an effective delivery to the trustees. The facts are that on November 27, 1943, which was within 60 days of the close of petitioner's tax year, a check in the designated amount was delivered to the Union National Bank of Little Rock, Arkansas, under cover of an escrow letter, now a part of the record and given in our findings of fact. Upon the delivery of property by the owner in escrow, with a declaration of his intent that at a later date or upon the happening of a specified event the holder should make delivery of the subject matter to a designated trustee to hold in trust without having reserved the power of revocation, a valid trust is created as of the date of delivery in escrow. *Smith* v. *Youngblood*, 68 Ark. 255, 58 S. E. 42 (pay over on death of settlor) ; *Hudgens* v. *Taylor*, 206 Ark. 507, 176 S. W. (2d) 244; *Nolen* v. *Harden*, 43 Ark. 307, 51 Am. Rep. 563; and *Williams* v. *Smith*, 66 Ark. 299, 50 S. W. 513 (delivery later date) ; Restatement, Trusts, Sec. 32, Comment c. This latter comment contained in subparagraph (c), § 32, Restatement of Trusts, reads as follows:

*c. Deposit in escrow.* Where the owner of property delivers in escrow the subject matter or an instrument of transfer, manifesting an intention that upon the happening of a certain event the depositee should hold the property in trust or should deliver the subject matter or the instrument to a third person as trustee, and the owner does not reserve a power of revocation, a trust is created at the time of the delivery in escrow. Although the title to the property does not pass to the trustee until the happening of the event, in the meantime he holds in trust such rights as are created in him as a result of the deposit in escrow. At the time of the delivery in escrow there is a presently created trust and not merely a trust to arise in the future, although the trust property is at first the rights under the deposit in escrow, and, later, on the happening of the condition, the trust property is the property transferred. It is not a deposit in escrow, however, and no trust arises at the time of the deposit, if the depositor reserves a power of revocation or if the specified event is merely the depositor's future mental desire or intention (compare Restatement of Contracts, § 103).

In petitioner's case the contingent event designated in the escrow declaration was the approval of the plan by the Internal Revenue Bureau. It is further worthy of note that when the Commissioner of Internal Revenue later on approved the plan and the trust the fund was then deposited to the account of the trust itself to which all subsequent contributions by the company have been made. These subsequent contributions have been allowed as deductions by the Commissioner.

In order that we may understand that petitioner did make a contribution to the trust within the time required by law certain excerpts from sections of the Revenue Code under which petitioner claims its

deductions are quoted and combined to form the following sentence: "In computing net income there shall be allowed as deductions": (section 23, I. R. C.) "Contributions of an Employer to an Employees' Trust * * *" (section 23 (p), I. R. C.) *"in the taxable year when paid,* * * *" (section 23 (p) (1) (A), (B), and (C). [Emphasis added.]

The effect of the above quoted clause in section 23 (p) (1) (A), (B), and (C) is to place all taxpayers on a cash basis.[2] To remedy this situation section 23 (p) (1) (E), I. R. C., was added to the bill as originally introduced in the House of Representatives and the Senate.[3] Subparagraph (E) provides:

(E) For the purposes of subparagraphs (A), (B), and (C), a taxpayer on the accrual basis shall be deemed to have made a payment on the last day of the year of accrual if the payment is on account of such taxable year and is made within sixty days after the close of the taxable year of accrual.

Section 23 (p) (1) (E) "is intended to permit a taxpayer on the accrual basis to deduct such accrued contribution or compensation, provided payment is actually made within 60 days after the close of the year of accrual." Regulations 111, section 29.23 (p)–1.

Let us assume that an accrual taxpayer at the close of the taxable year establishes a trust fund and a pension plan which meet all of the requirements of sections 23 (p) and 165 (a). The taxpayer, however, merely *accrues* his contribution but makes actual payment within 60 days of the close of the year of accrual. What would be the purpose of section 23 (p) (1) (E) if we said that the contribution was not deductible because there was no trust *res* at the close of the taxable year and, therefore, no trust within section 165 (a)? The very purpose of section 23 (p) (1) (E) was to relieve a taxpayer who did not make his payment within his taxable year but did make it within 60 days thereafter.

The construction which we have given above to section 23 (p) (1) (E) seems to be the same as that given by the Commissioner in Mim. 5985, 1946–1 C. B. 72. In that mimeograph the Commissioner says:

1. Section 23 (p) (1) (A) and (C) of the Internal Revenue Code provides for deductions of contributions paid into a trust which is exempt under section 165 (a) of the Code. A trust is exempt under the latter section upon compliance with certain requirements. one of which is that it be part of a stock bonus, pension, or profit-sharing plan. Thus, the plan must be in effect before the trust is entitled to exemption under that section. Further, there must be a valid and existing trust to which the contribution is made. If an essential element of a trust is lacking there is, in effect, no trust. Thus, if the trust corpus is lacking, it can not be said that a trust is in existence. The corollary, therefore, is that exemption under section 165 (a) applies to an existing trust, complete in all respects, inclusive of possession of the corpus.

---

[2] Hearings before the Committee on Finance, United States Senate on H. R. 7378, 77th Congress, Second Session, Statement of Richard D. Sturtevant, pp. 455, 466.

[3] H. R. 7378, sec. 165.

2. Section 23 (p) (1) (E) of the Code provides that a taxpayer on the accrual basis shall be deemed to have made a payment, for the purposes of subparagraphs (A), (B), and (C), on the last day of the year of accrual if the payment is on account of such taxable year and is made within 60 days after the close of the taxable year of accrual. Subparagraph (A) pertains to a pension trust and subparagraph (C) to a stock bonus or profit-sharing trust. Thus, if there is a trust, the taxpayer on the accrual basis is permitted to make his contribution thereto within 60 days after the close of the year of accrual. Subparagraph (E), however, does not create a trust or relate a trust back to a period when in fact it had no existence.

3. The effect of the aforesaid requirements is that contributions to an employees' trust, to constitute allowable deductions, must be made pursuant to a plan in effect and to a valid existing trust which is recognized as such under the law prevailing in the jurisdiction to which the trust is subject.

4. *Under the authority of section 3791 (b) of the Internal Revenue Code, the aforesaid rule will be deemed to have been complied with for taxable years ending on or before February 28, 1946, in the case of a taxpayer on the accrual basis, if all requisites have been met on or before the last day of the year of accrual except the furnishing of the trust corpus, which must be supplied within 60 days after the close of such taxable year of accrual.* [Emphasis added.]

It is our view that the tentative trust set up by petitioner September 30, 1943, was complete and effective in so far as section 165 (a) (1) and (2) is concerned, except the paying in of the trust corpus. That defect was cured by the payment which petitioner made on November 27, 1943. The resolution of petitioner's directors and the tentative trust agreement both state that the petitioner's action was for the purpose of creating a fund "for the benefit of employees of the company * * * consistent with regulations governing same * * *." We construe this to mean that conformance with section 165 (a) (1) and (2) was thereby made and that a pension plan as required by 23 (p) was thus complied with, except as to certain details which required the Commissioner's approval. The resolution of September 29, 1943, speaks of creating a pension trust plan and goes on to say, as stated above, that it was to be consistent with regulations governing same. The avowed purpose was that the contribution meet the requirements of the law within which petitioner seeks to bring its contribution. In *Tcvannes Watch Co.* v. *Commissioner, supra,* the court said in holding that a corporation was a trust within section 165 (a) that:

* * * "Trust" is not a term of art or of fixed content, and its meaning for the purposes of this section is not necessarily the same as under state law or as under other sections of the Internal Revenue Code.

We think that the word "plan" is also to be given a broad construction consistent with the intent of the parties and that on September 29, 1943, petitioner created a pension plan within the meaning of section 23 (p) and an employees' trust as contemplated by section 165 (a).

We think this was so, even though some important details had yet to be worked out.

Petitioner's plan, as completed. has been approved by respondent and contributions to the trust have been made each year from 1943 to 1949, inclusive.

Respondent argues that the tentative trust agreement does not make it impossible for the fund to be diverted to purposes other than for the exclusive benefit of the employees or their beneficiaries as required by section 165 (a) (2). The resolution of September 29, 1943. states:

\* \* \* That the fund shall be deposited in escrow subject to the approval of the Internal Revenue Bureau of said plan as proposed and/or amended, and that all of said funds be returned to the Company in the event approval be not given.

This recital does not take the trust outside of section 165 (a) (2) and thereby prevents the deduction of contributions thereto for we held in *Surface Combustion Corporation*, 9 T. C. 631, affd., 181 Fed. (2d) 444, that a contribution to an otherwise valid plan contingent on respondent's approval was a contribution which was irrevocable and, therefore, deductible.[4]

Respondent's final argument points to phrases in the trust instrument executed December 31, 1943, such as this, "Whereas the corporation desires to create \* \* \*." Respondent suggests that there was no reason for "desiring" to create a trust on December 31, 1943, if one was already in existence. We think that this argument only serves to cloud the issue for the December 31, 1943, instrument sets out that it relates back to September 30, 1943, and the original instrument recognized that revision would be necessary, and that the tentative trust was to serve only until final drafting was completed. These revisions were the ones contemplated by the tentative agreement in order that the trust ultimately conform with section 165 (a) (3), (4), (5), and (6). It was as to these latter subparagraphs that Congress extended the grace period up to 1945.

The parties have stipulated that the actuarial data submitted to respondent with reference to the deduction of contributions to 555, Inc. Pension Trust for the fiscal years 1943 and 1944 is made a part of the record and shall be available for a computation under Rule 50. In the computation under Rule 50 petitioner's excess profits tax credit for the year ended September 30, 1944, will be adjusted in accordance with the stipulation of the parties which is set out in the last paragraph of our findings of fact.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

[4] See IT : PS No. 47, February 20, 1945, for payments prior to March 2, 1945, conditioned on respondent's approval or stockholder ratification.