OPINION. Black, Judge: Employees’ pension plan. — Under this issue the question is whether respondent erred in determining that petitioner was not entitled to deduct its contributions to a claimed employees’ pension trust for the years 1943 and 1944. Respondent contends that petitioner did not have in effect during the taxable years ended December 31, 1943, and December 31, 1944, an employees’ pension plan and trust within the meaning of those terms as used in sections 23 (p) and 165 (a) of the Internal Revenue Code. Petitioner contends that its contributions are deductible under sections 23 (p) and 165 .(a). The parties recognize that in accordance with the Revenue Act of 1942, contributions to an employees’ pension plan must be brought within section 23 (p) if they are to be allowable deductions. T.avannes Watch Co. v. Commissioner, 176 Fed. (2d) 211; Times Publishing Co., 13 T. C. 329, affd. (CA-3) 184 Fed. (2d) 376. Among other things, section 23 (p) provides that the contribution must be to an employees’ trust exempt under section 165 (a), and it is to such a trust that petitioner contends its contributions were made. For the taxable years herein it was not necessary that at the time of petitioner’s contributions that the trust conform with all of the subsections of 165 (a) for the Revenue Act of 1942, as finally amended by Section 2 of Public Law 511, December 20, 1944, provides as follows: 1942 ACT, SEC. 162. PENSION TRUSTS. (d) Taxable Teaks to Which Amendments Applicable. — The amendments made by this section shall be applicable as to both the employer and employees only with respect to taxable years of the employer beginning after December 31, 1941, except that — ■ ******* (2) A STOCK, PENSION, PROFIT-SHARING, OB ANNUITY' PLAN— (A) put into effect after September 1, 1942, and prior to January 1, 1945, shall be considered as satisfying the requirements of section 165 (a) (3), (4), (5), and (6) for the period beginning with the date on which it was put into effect and ending with June 30, 1945, if all provisions of the plan which are necessary to satisfy such requirements are in effect by the end of such period and have been made effective for' all purposes with respect to the portion of such period after December 31, 1943; It is, therefore, plain that immediate compliance with subsections (3) through (6) of section 165 (a) was not necessary if ultimate compliance was within the grace period, and such was the case in this proceeding. The question is, therefore, somewhat narrower as we must determine only whether there was a plan within the meaning of section 23 (p) and whether the trust complied with subsections (1) and (2) of section 165 (a).[1] On December 13, 1943, petitioner’s directors appropriated $30,000 as an irrevocable contribution to an employees’ pension plan and on December 15, 1943, a trust agreement was executed. Although there was no res until February 29, 1944, and hence no trust as such in 1943,[2] for the purpose of sections 23 (p) and 165 (a) the trust is deemed to have been in existence as of the close of the taxable year 1943 because section 23 (p) (1) (E)[3] specifically provides for such retroactive effect when payment is made by an accrual-taxpayer within 60 days of the close of the taxable year of accrual. This is also true of the taxable year 1944, where the accrued contribution was paid on February 23,1945. 555, Incorporated, 15 T. C. 671. In determining whether there was in existence an employees’ pension plan and a trust within the meaning of sections 23 (p) and 165 (a) we give full effect to the expressed intention as set out in the minutes of petitioner’s directors and the trust agreement. The appropriation was, by its terms, irrevocable, and the trust and plan were to be ones which would “meet the requirements of the various governmental units or agencies having jurisdiction over same.” A contribution to an otherwise valid plan contingent on respondent’s approval is nonetheless an irrevocable and deductible contribution. Surface Combustion Corporation, 9 T. C. 631, affd., 181 Fed. (2d) 444.[4] In Tavannes Watch Co. v. Commissioner, supra, the court held that a “trust” as used in section 165 (a) was to be given a meaning consistent with the purpose of the statute. We have done this here, and we likewise give to the word “plan” a meaning consistent with the purpose of section 23 (p). When, as here, there is an irrevocable contribution for the purpose of establishing an employees’ pension plan and trust, which plan and trust are to conform with the regulations governing same (sections 23 (p) and 165 (a)), we believe that a plan is established and a trust is created[5] which meet the requirements of section 23 (p) and section 165 (a) (1) and (2). This, of course, is on the assumption that compliance with all of section 165 (a) is ultimately made within the grace period which was the case herein. We think the facts in the instant case with reference to the pension trust deductions are essentially the same as in 555, Incorporated, supra, and following our decision in that case this issue is decided in favor of the petitioner. The parties have stipulated that certain actuarial data previously submitted to respondent shall be available to either party in a recom-putation under Rule 50. Abnormal deductions in base period years. — Petitioner has assigned as error respondent’s failure to disallow certain claimed abnormal deductions for the years 1938 and 1939 in computing petitioner’s excess profits credit. Petitioner contends that these claimed deductions were of a class abnormal for petitioner within the meaning of section 711 (b) (1) (J) (ii) of the Internal Revenue Code as limited by section 711 (b) (1) (K) of the Internal Revenue Code. The pertinent provisions of these sections are printed in the margin.[6] Moving expenses. — From December 1937 through March 1938, petitioner was engaged in moving its warehouse to larger quarters and in connection with this move incurred expenses which were abnormal deductions and, therefore, petitioner claims that under section 711 (b) (1) (J) these expenses should be disallowed in computing its excess profits credit. Petitioner cites Wentworth Manufacturing Co., 6 T. C. 1201. It is not enough that these expenses were abnormal, but petitioner must also show that they were not a consequence of any of the limiting factors of section 711 (b) (1) (K) (ii). Petitioner has failed to show thát these deductions were not a consequence of these limiting factors, Williams Leveen Corporation, 3 T. C. 593. On the contrary, we have found that the deductions were a consequence of a change in the manner and size of the operation of petitioner’s business which precludes the disallowance of these deductions, section 711 (b) (1) (K) (ii). These expenditures were directly due to the growth and expansion of petitioner’s business; as to this we think there can be no doubt. Testing machinery loss. — Under this issue petitioner claims that the losses resulting from the repeal of an Arkansas statute should be disallowed for 1938 .and 1939. These losses, though taken and allowed as bad debt losses, are entitled to separate classification under section 711 (b) (1) (J). Green Bay Lumber Co., 3 T. C. 824; Denman Tire & Rubber Co., 14 T. C. 706. These were losses of a class abnormal to petitioner, and we have so found. Petitioner has also proved that they were not a consequence of any of the limiting factors of section 711 (b) (1) (K) (ii) and are, therefore, to be disallowed in computing its excess profits credit. ' "William Leveen Corporation, supra. Embezzlement loss and loss from advances to store manager.— Petitioner claims that these losses should be disallowed under section 711 (b) (1) (J) as they represent deductions abnormal for petitioner. But before petitioner, can have these deductions disallowed, it must first prove satisfactorily that they have been allowed. This, we think, petitioner has failed to do. The record does not satisfy us that petitioner claimed the loss in 1939, or whether it recovered through insurance or otherwise the loss resulting from the embezzlement. The same situation exists as to the claimed loss from making an advance of $653.66 to a store manager in 1939. The return of petitioner for the year 1939 which is in evidence as Exhibit G and which has been carefully examined, does not contain a deduction in the amount of either the embezzlement loss or the claimed advance to the store manager, nor did petitioner claim a deduction under either item 16 entitled “Salaries and Wages (not deducted elsewhere),” or under item 23 entitled “Loss by fire, storm, shipwreck, or other casualty, or theft,” Since petitioner has failed to meet its burden of proof regarding these two claimed deductions, it is not proper that they should be added to the income reported on its 1939 return for the purpose of computing petitioner’s credit for excess profits tax purposes. Change in method of pricing inventory. — The final issue herein relates to a claimed abnormal “deduction” resulting from a change in the method of pricing petitioner’s inventory. In 1932, petitioner purchased merchandise from O. C. Y. Co. of which petitioner was a one-third stockholder. From 1934 through 1937, petitioner received from O. C. Y. Co. distributions ranging from $11,924 to $26,882.06 a year. In 1938, petitioner changed its method of valuing its ending inventory in such a way that the lower cost of its merchandise would be reflected directly in inventory. Roughly one-half of the total estimated adjustment’was made in 1938 and the remaining one-half in 1939. Petitioner claims these to be abnormal deductions within the meaning of section 711 (b) (1) (J) and should, therefore, be disallowed. As a matter of fact, these adjustments in inventory were not deductions at all. Even if it could be said that these were abnormal deductions within section 711 (b) (1) (J), which we do not think they are {Universal Optical Co., 11 T. C. 608), these inventory adjustments were a consequence of the change in manner of operation of petitioner’s business and, therefore, may not be disallowed. Section 711 (b) (1) (K) (ii). Decision will be entered under Rule 50. SEC. 165. EMPLOYEES’ TRUSTS. (a) Exemption From Tax. — A trust forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall not be taxable under this supplement and no other provision of this supplement shall apply with respect to such trust or to its beneficiary— (1) if contributions are made to the trust by such employer, or employees, or both, for the purpose of distributing to such employees or their beneficiaries the corpus and income of the fund accumulated by the trust in accordance with such plan; (2) if under the trust instrument it is impossible, at any time prior to the satisfaction of all liabilities with respect to employees and their beneficiaries under the trust, for any part of the corpus or income to be (within the taxable year or thereafter) used for, or diverted to, purposes other than for the exclusive benefit of his employees or their beneficiaries; ******* Cf. McKee v. Paradise, 299 U. S. 119 SEC. 23. DEDUCTIONS PROM GROSS INCOME. In computing net income there shall be allowed as deductions: (p) Contribution of an Employer to an Employees' Trust or Annuity Plan and Compensation Under a Deferred-Payment Plan. (1) General rule. — If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued ■on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under subsection (a) but shall be deductible, if deductible under subsection (a) without regard to this subsection, under this subsection but only to the following extent: (E) For the purposes cf subparagraphs (A). (B), and (C), a taxpayer on the accrual basis shall be deemed to have made a payment on the last day of the year of accrual if the payment is on account of such taxable year and is made within sixty days after the close of the taxable year of accrual. See also IT: PS No. 47, February 20, 1945, for payments prior to March 2, 1945, contingent on respondent's approval or stockholder ratification. See section 23 (p) (1) (E), footnote 3, supra, for accrual taxpayers making payment within 60 days of the close of the taxable year. SEC. 711. EXCESS PROFITS NET INCOME. " * • * * * • • (b) Taxable Years in Base Period.— ' (1) General rule and adjustments. — The excess profits net income for any taxaoie year subject to the Revenue Act of 1936 shall be the normal-tax net income, as defined in section 13 (a) of such Act; and for any other taxable year beginning after December‘31,. 1937, and before January 1, 1940, shall be the special-class net income, as defined in section 14 (a) of,the applicable revenue law. In either case the following adjustment shall be made (for additional adjustments in case of certain reorganizations, see section 742 (e)) : ******* (J) Abnormal Deductions. — Under regulations prescribed by the Commissioner, with the approval of the Secretary, for the determination, for the purposes of this subpara-graph, of the classification of deductions— (i) Deductions of any class shall not be allowed if deductions of such class were abnormal for the taxpayer, and (ii) If the class of deductions was normal for the taxpayer, but the deductions of such class were in excess of 126 per centum of the average amount of deductions of such class for the four previous taxable years, they shall be disallowed in an amount equal to such excess. (K) Rules for Application of Subparagraphs (H), (I), and (J). — For the purposes of subparagraphs (H), (I), and (J) — (ii) Deductions shall not be disallowed under such subparagraphs unless the taxpayer establishes that the abnormality or excesses not a consequence of an increase in the gross income of the taxpayer in its base period or a decrease in the amount of some other deduction in its base period, and is not a consequence of a change at any time in the type, manner of operation, size, or condition of the business engaged in by the taxpayer.