The Branham Company v. Commissioner.
Branham Co. v. Commissioner
Docket No. 60499.
United States Tax Court
T.C. Memo 1960-31; 1960 Tax Ct. Memo LEXIS 253; 19 T.C.M. (CCH) 168; T.C.M. (RIA) 60031; February 29, 1960
James J. Costello, Jr., Esq., for the petitioner. Charles B. Wolfe, Esq., for the respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: Respondent determined a deficiency in petitioner's income tax for the year 1951 in the amount of $26,615.01. The issue for decision is whether petitioner's contribution in 1951 to "The Branham Company Pension Trust" is deductible under section 23(p) of the Internal Revenue Code of 1939. Findings of Fact Some of the facts have been stipulated and are hereby found as stipulated. Petitioner is a corporation *254 organized under the laws of Illinois, its principal office being located at 360 North Michigan Avenue, Chicago, Illinois. Petitioner files its income tax returns on the calendar year basis using an accrual method of accounting. It filed its 1951 income tax return with the then collector of internal revenue for the first district of Illinois. During the years 1951 and 1952, Monroe H. Long was president and Lewis S. Greenberg was vice president and treasurer of the petitioner. Long and Greenberg were also members of the petitioner's Board of Directors during those years. Arthur M. Kracke, a self-employed practicing attorney, was retained by petitioner during the years 1951 and 1952 for special purposes. Kracke was not a member of petitioner's Board of Directors. Throughout the calendar year 1951, the petitioner had in existence a profit-sharing plan and trust known as "The Branham Company Employees Retirement Trust," hereinafter referred to as the Retirement Fund, which met the requirements of section 165(a) of the Internal Revenue Code of 1939 and qualified as exempt under that section at all times during the year 1951. In that year, petitioner made cash contributions to the exempt *255 profit-sharing trust in the amount of $72,288.73. During the same year 1951, petitioner became interested in establishing a pension plan for its employees. Officers of petitioner discussed such a plan during 1951 with George Schuermann, manager of the Herman A. Zischke organization of Chicago, Illinois, which organization was a general agent for the Union Central Life Insurance Company of Cincinnati, Ohio, hereinafter referred to as the Insurance Company. On December 13, 1951, the Board of Directors of The Branham Company adopted a resolution which provided, as follows: "RESOLVED that the Company adopt a Pension Plan to be carried into effect by the creation of a Pension Trust to be known and designated as 'The Branham Company Pension Plan' effective December 1, 1951, established for the benefit of qualified salaried employees of the Company as provided in a trust agreement creating said Trust; and, "RESOLVED, FURTHER, that said Pension Trust conform in substance to the draft of a trust agreement submitted to the Board of Directors at this meeting, and that, subject to such necessary formal changes, if any, as may, prior to the execution of the Trust Agreement, be made therein *256 by the officers of the Company on the advice of legal counsel, said draft of the agreement be adopted and approved as constituting The Branham Company Pension Plan; and, "RESOLVED, FURTHER, that said Pension Plan be so designed to qualify under the provisions of Section 165 of the Internal Revenue Code as amended and to conform with the Defense Production Act of 1950 as amended and the regulations and orders promulgated pursuant thereto, and that the officers of the Company be and hereby are authorized and directed to make application to the appropriate authorities of the Government for rulings that said Trust Agreement and the Pension Plan provided for thereunder qualify under the provisions of Section 165 of the Internal Revenue Code as amended and do not contravene the Defense Production Act of 1950 and the regulations and orders promulgated thereunder; and "RESOLVED, FURTHER, that the President and Secretary of the Company be and they hereby are authorized and directed on behalf of the Company to execute the original of the Trust Agreement so prepared, and as many duplicate copies thereof as are deemed necessary, as the complete *257 Trust Agreement evidencing the Company's Pension Trust; and that an original of said Trust Agreement when executed and completed as aforesaid shall be filed as a part of the minutes of this meeting; and "RESOLVED, FURTHER, that the Trustees named in said Trust Agreement, namely, MONROE H. LONG, LEWIS S. GREENBERG and ARTHUR M. KRACKE, are hereby nominated and appointed by the Company as Trustees under said Trust Agreement for and during the respective terms as therein provided; and "RESOLVED, FURTHER, that the Company hereby appropriate an amount owing under said Trust for the calendar year 1951 and direct that the same shall be paid on or before December 31, 1951. "RESOLVED, FURTHER, that the Secretary of the Company prepare a certified copy of these minutes for such purposes as may be required for the execution and completion of the transaction for the establishment of said Pension Plan." During the month of December 1951 petitioner and the individuals named as trustees executed an agreement known as "The Branham Company Pension Trust", hereinafter referred to as the Pension Trust, which provided, in part, as follows: "That certain trust agreement made and entered into *258 by and between THE BRANHAM COMPANY, as aforesaid, and MONROE H. LONG, LEWIS S. GREENBERG and ARTHUR M. KRACKE, as Trustees, dated the 1st day of December, 1951 establishing 'THE BRANHAM COMPANY PENSION PLAN' effective as of the 1st day of December, 1951, reading as follows: * * *
"ARTICLE XV: RIGHTS OF COMPANY TO DISCONTINUE OR AMEND PLAN * * *
2 * * * (c) That no amendment shall have any retroactive effect so as to deprive any participant of any benefit already accrued; provided, however, that any amendment may be made retroactively which is necessary to bring the Plan into conformity with governmental regulations in order to qualify the Plan for tax exemptions. * * *
"ARTICLE XVI: TERMINATION OF TRUST 1. This trust shall be irrevocable. * * *
4. Notwithstanding any provision of this agreement to the contrary, upon termination of the trust, but only after all liabilities under the Plan have been satisfied, the Company shall be entitled to any balance of the net assets of the trust fund remaining at such time because of erroneous actuarial computations. 5. Prior to the satisfaction of all liabilities with respect to the employees, participants, pensioners, *259 and beneficiaries under this trust, it shall not be possible for the principal or income, or any part of either, to be used for, or diverted to, any purpose other than the exclusive benefit of said employees, participants, pensioners and beneficiaries. * * *
"ARTICLE XVIII: BASIC CONDITIONS Notwithstanding any other provisions of this trust, no person shall have or acquire any interest in the Trust Fund created hereby unless and until the Commissioner of Internal Revenue shall have ruled that the Plan evidenced by this Trust Agreement meets the conditions of Section 165 of the Internal Revenue Code, as amended, and also that contributions may be made to the Trustees of the Trust without being in contravention of the Defense Production Act of 1950 as amended or of regulations promulgated thereunder. If rulings have not been issued on or before a reasonable time as determined by the Trustees that the Trust and Plan evidenced by this Trust Agreement meet the conditions of Section 165 of the Internal Revenue Code, as amended, and that the contributions made and to be made are not in contravention of the Defense Production Act of 1950 *260 as amended and the regulations and orders promulgated thereunder, the Trustees shall deliver the entire Trust Fund or so much thereof as shall then remain in their hands to the employer making contributions to the Trustees of this Trust free and clear of this Trust, and this Trust shall thereupon terminate." Some of the employees of the petitioner who were to participate under the Retirement Fund were also designated as participants in the Pension Trust. Total compensation paid by petitioner to all participants in the Retirement Fund and Pension Trust for the year 1951 was $481,924.88. During the year 1951, the petitioner executed and delivered to the trustees of the Pension Trust checks drawn on the Continental Illinois National Bank and Trust Company of Chicago, as follows: Payee
Amount
Trustees, The Branham Company
Pension Trust
$ 5,000.00
Trustees, The Branham Company
Pension Plan
47,443.36
Total
$52,443.36
The trustees of the Pension Trust executed and delivered to the Insurance Company a Preliminary Application for Group Insurance, sometime in 1951. The trustees endorsed the checks delivered to them by The Branham Company to the order of the Insurance *261 Company, pursuant to the Preliminary Application for Group Insurance, and delivered them to the endorsee. During 1951, the Insurance Company presented the checks for payment and received payment. On January 16, 1952, the Insurance Company delivered to the trustees of the Pension Trust a group life insurance policy effective as of December 1, 1951, covering the lives of the employees of The Branham Company and providing for annuities after their retirement. In its corporate income tax return filed for the calendar year 1951 the petitioner claimed a deduction in the amount of $124,732.09 for contributions to the Pension Trust and Retirment Fund. On January 18, 1952, the petitioner submitted to the Pension Trust Division, Treasury Department, Washington, D.C., a request for a ruling that its Pension Trust is a tax-exempt employees trust and that contributions to it are deductible under sections 165 and 23(p). This request was amended by a letter submitted on March 5, 1952. Sometime prior to August 15, 1952, William Miller, agent for the Pension Trust Division of the internal revenue service, and Arthur M. Kracke, trustee of petitioner's Pension Trust, held a conference at which *262 time Miller advised Kracke that in the opinion of the internal revenue service the Pension Trust would not qualify for exemption for the year 1951 because of certain conditional clauses found in paragraph XVIII of the trust instrument, and that amendments to those provisions were necessary in order to qualify for exemption. Subsequent to the initial conference between Miller and Kracke, additional conferences were held by them which were also attended by George Schuermann. At one of these conferences Miller was asked for suggestions as to what changes should be made in the Pension Trust so that it might become qualified as exempt under the 1939 Code. One of the suggestions made by Miller was that the Pension Trust be amended to make the effective date January 2, 1952. On April 14, 1952, the Board of Directors of The Branham Company held a special meeting. The minutes of the meeting contain, among other things, the following: "The Chairman stated that heretofore on January 18, 1952 this company filed with the Commissioner of Internal Revenue a Pension Trust Plan, entitled ['The] Branham Company Pension Trust' and that subsequently on April 7, 1952 a conference was had between *263 representatives of The Branham Company and a representative of the Pention [Pension] Trust Division of the Commissioner of Internal Revenue, at which time certain amendments were discussed. "The said amendments are set forth in an Amendment to the Pension Trust, which the Chairman directed the Secretary to read to the members of the meeting. After the same were further discussed as to interpretation and effect, it was on motion regularly made, seconded and unanimously carried, "RESOLVED that the Amendment to The Branham Company Pension Trust proposed and read by the Secretary to the meeting, be and the same is hereby approved. "It was further RESOLVED that the Officers of the Company be and the same are hereby authorized to execute the said Amendment to The Branham Company Pension Trust and deliver the same to the proper authorities in the Pension Trust Division of the Office of Commissioner of Internal Revenue." On April 15, 1952, the petitioner and the trustees of the Pension Trust executed an amendment to the Pension Trust, which amendment provided, in part, as follows: "5. Amend Article XVIII by substituting therefor the following: "'Notwithstanding any other provisions *264 of this trust, no person shall have or acquire any interest in the Trust Fund created hereby unless and until the Commissioner of Internal Revenue shall have ruled that the Plan evidenced by this Trust Agreement meets the conditions of Section 165 of the Internal Revenue Code, as amended, and also that contributions may be made to the Trustees of the Trust without being in contravention of the Defense Production Act of 1950 as amended or of regulations promulgated thereunder. If rulings have not been issued on or before a reasonable time as determined by the Trustees that the Trust and Plan evidenced by this Trust Agreement meet the conditions of General Wage Regulation 21 of the Defense Production Act of 1950 as amended, the Trustees shall deliver the entire Trust Fund or so much thereof as shall then remain in their hands to the employer making contributions to the Trustees of this Trust free and clear of this Trust, and this Trust shall thereupon terminate.' "6. The effective date of the said Pension Trust Agreement shall be amended to read that the effective date of the said agreement shall be as of January 2, 1952 instead of December 1, 1951 as provided *265 for in the original instrument." On May 2, 1952, Kracke forwarded to the Pension Trust Division, internal revenue service, a copy of the above amendment, as executed on April 15, 1952. At a conference in May 1952 attended by a representative of the Pension Trust, Miller, and Schuermann, Miller was informed that the insurance contract, previously delivered to the trustees of the Pension Trust, would be changed to conform to the new effective date of the Pension Trust. Further discussion was had between those present at the conference with respect to the contribution which petitioner had made in 1951 to the Pension Trust and the fact that the petitioner would lose a deduction for its contribution made in that year. A suggestion was made that the Insurance Company return the premium covering that portion of the period from December 1, 1951, to the new effective date to the Pension Trust so that the petitioner might secure a return of the contribution. On May 14, 1952, the Commissioner of internal revenue issued a determination letter to the petitioner which stated that the trust agreement, executed in December 1951 and amended April 15, 1952, met the requirements of section 165(a) *266 and was entitled to exemption under the provisions of that section. The letter further stated that contributions made to the amended trust would be allowable deductions from gross income in accordance with section 23(p). The group policy delivered to the trustees of the Pension Trust on January 16, 1952, by the Insurance Company was amended on May 23, 1952, to provide that the effective date of the policy was January 2, 1952. Subsequent to the last conference in May, between Miller, Schuermann and Kracke, Schuermann contacted the central office of the Insurance Company and requested that some arrangement be made to return to The Branham Company that portion of the initial premium which represents the period December 1, 1951, to January 2, 1952. Schuermann had not told representatives of the Pension Trust or The Branham Company that he was making such a request; nor had he been requested to do so by either the trustees of the Pension Trust or representatives of The Branham Company. A letter dated June 25, 1952, was sent by the Insurance Company from its Cincinnati office to the Herman A. Zischke organization, Chicago, Illinois, which contained, among other things, the following: *267 "(a) A check drawn on the Insurance Company's bank account in Chicago, Illinois, in the amount of $48,437.88. "(b) A premium statement as of January 2, 1952. "(c) A statement of premium refund as of December 1, 1951." The check drawn in the amount of $48,437.88 represented the amount of refund which would be due to the petitioner as a result of the change in the effective date of the policy. The check was dated June 24, 1952, and made payable to "Trustees, The Braham Company." The letter further disclosed that the total annual premium then payable for the insurance in force as of January 2, 1952, amounted to $48,475.94. Schuermann did not deliver the check to the payees or inform them that he had received it. On June 26, 1952, Schuermann sent a letter to Jerome S. Howard, Manager, Valuation Division of the Insurance Company in Cincinnati, Ohio, which stated, in part, as follows: "We are returning to you herewith the company's check for $48,437.88 together with the revised premium accounting pending definite action on the part of the employer with respect to the corporation's 1951 tax return. "As you know, the corporation's tax deductions in 1951 for the contribution to *268 the plan was disallowed on the theory that a qualified trust was not in existence prior to December 31, 1951. As you also know, the Trust Agreement and Insurance Contract were subsequently amended to an effective date of January 2, 1952 and the intent was that the company would forego its 1951 deduction but take a deduction during their 1952 fiscal year for the amount contributed as of January 2, 1952. Since this action amending the plan has been completed, many conferences have been held between our organization, the employer, their legal counsel and the Treasury Department because of certain complications that would arise if the company proceeded as above and made no claim for a 1951 deduction. "The situation has now arrived at a point where the company will probably, within the next 30 days, take action to reamend the Plan to the December 31, 1951 effective date and seek relief in the Tax Court when their 1951 return is ultimately audited by the Bureau of Internal Revenue. "We would appreciate your holding this matter of a return of the 1951 premium and a new accounting for the January 2, 1952 premium until we know definitely what the effective date is finally going to be." *269 The check, mentioned above, was returned to the Insurance Company without endorsement by the petitioner or trustees of the Pension Trust. The Insurance Company endorsed the check as follows: For Credit Check Returned Unused The Union Central Life Ins. Co. Pay any Bank, Banker, Trust Co., or order, Oct. 28, 1952 The Union Central Life Ins. Co. W. C. Dunkhorst, Treas. The check cleared through the First National Bank of Cincinnati, Ohio, on October 29, 1952. On October 15, 1952, the Board of Directors of The Branham Company held a special meeting. The minutes of the meeting provide, in part, the following: "The Chairman stated that a review of the Company's Pension Trust had been made during the course of the past several months and that a number of changes seemed desirable, particularly such changes as making the effective date of the new Agreement December 1, 1951 to conform with the effective date of the original Agreement. The Chairman revealed the history of the old Agreement with the Treasury Department, stating that they had refused to allow the December 1, 1951 effective date, because contributions thereunder were made conditional upon Treasury Department *270 approval, and had insisted on an effective date in 1952, with the result that the Company had amended the Trust on April 24, 1952, making the effective date January 2, 1952. He further stated that counsel for the Company now advises that in his opinion the position of the Treasury Department cannot be sustained and that the Agreement should be made effective December 1, 1951 in accordance with the original intent, and that even if the Company should not be able to finally support its position in the Tax Court that the December 1, 1951 contribution would nevertheless be allowed as a past service contribution for ten years at the rate of one-tenth per year, starting in 1952. He said that counsel for the Company had prepared a draft of Agreement incorporating the changes desired, which the Chairman then presented to the Directors, and summarized the major provisions of the new Agreement. "After a full discussion of the new Agreement, the Chairman recommended that the proper officers of the Company be authorized to execute the Agreement and present it to the Trustees for their formal acceptance. On Motion duly made and seconded, the following resolutions were adopted, all of the Directors *271 present voting in the affirmative thereon: "RESOLVED, That the Executive Vice-President, Eugene F. Corcoran, and the Secretary, Zora Harris, be, and they are hereby, authorized, empowered and directed to execute on behalf of The Branham Company a completely amended and restated Agreement evidencing The Branham Company Pension Trust in the form presented to this meeting, and that the contribution thereto as of December 1, 1951 be hereby approved and that additional contributions be made to the Trust as of each anniversary date on December 1 thereafter, in accordance with the terms of said Agreement;" The petitioner and the trustees of the Pension Trust executed a document on October 15, 1952, entitled "The Branham Company Pension Trust" which in all material respects is the same as the Pension Trust agreement as amended April 24, 1952, except that it provided December 1, 1951, as the effective date of the trust. The group policy was amended on October 22, 1952, to provide that the effective date of the policy was December 1, 1951. On January 28, 1953, the petitioner submitted to the Pension Trust Division, Washington, D.C., a request for a ruling that the Pension Trust, as amended *272 October 15, 1952, qualified as a tax-exempt pension trust under section 165(a). The Commissioner of Internal Revenue issued a determination letter on May 28, 1953, which provided that the Pension Trust, as amended on October 15, 1952, met the requirements of section 165(a) of the 1939 Code, but only for taxable years beginning after December 31, 1951. It was petitioner's intention, in December 1951 and the period following, to establish a pension trust in 1951 which would qualify as tax exempt under section 165(a) and contributions to which would be deductible under section 23(p). Opinion Petitioner contends that the Pension Trust established in December 1951 was in that year a qualified trust under section 165(a) of the 1939 Code and that the contributions to the trust in 1951 in the amount of $52,443.36 were deductible under section 23(p) of the 1939 Code. It is respondent's position that the trust did not satisfy the requirements of section 165(a)(2)[1] because under Article XVIII of the original trust instrument it was possible, during the year in question, to divert the corpus to purposes other than for the exclusive benefit of the employees. *273 Article XVIII of the trust provided that no interest should vest until the Commissioner ruled that the trust and plan qualified under section 165 and that contributions to the trust were deductible under section 23(p). The article further provided that if rulings to such effect had not been issued "before a reasonable time as determined by the trustees", the trustees were to return the funds to the petitioner. Article XVIII contained similar conditions with respect to possible contravention of the Defense Production Act of 1950. This Court has previously decided that a condition is not the basis for disqualification of a pension trust if, because of the condition, rights were not vested in the participants until the Commissioner ruled that the trust qualified under section 165(a) and that contributions to it were deductible under section 23(p), or if, because of the condition, the taxpayer could secure a return of the contribution if the Commissioner's approval was not given, Meldrum & Fewsmith, Inc., 20 T.C. 790 (1953), affirmed on other issues, 230 F. 2d 283 (C.A. 6, 1956); 555, Inc., 15 T.C. 671 (1950); Surface Combustion Corporation, 9 T.C. 631 (1947), *274 affd. 181 F. 2d 444 (C.A. 6, 1950). [2] The conditions in Article XVIII of the trust here before us are not substantively different than the conditions which existed in the above-cited cases and which we held did not serve to disqualify the trusts there involved. Respondent argues that petitioner's actions subsequent to the effective date of the trust indicate that the trust was by its very nature conditional and that the contributions in December 1951 were not absolute, or that no trust in fact existed. The basis for respondent's position is the fact that petitioner amended the trust instrument on April 15, 1952. It was then that the effective date of the trust was changed to January 2, 1952, and the portion of Article XVIII which was objectionable to the Commissioner was deleted. It is this subsequent action by the petitioner, rather than the trust instrument itself, which respondent argues should disqualify the Pension Trust *275 for the year 1951. It was petitioner's intention to create, in 1951, a qualified trust and plan. It established a Pension Trust and contributed $52,443.36 to it in December 1951. After it had secured final papers from the Insurance Company, petitioner filed a request for ruling with the Commissioner. When revenue agent Miller indicated that there were objections to the trust, petitioner amended its trust, as suggested by agent Miller, to secure a favorable ruling from the Commissioner. The action was not indicative of an intent to establish a conditional trust and to contribute sums only on a conditional basis but was in furtherance of petitioner's primary intention, namely, to create a permanent qualified pension trust. If the Commissioner had ruled that the original trust qualified, all rights would vest in the participants as of the effective date, December 1, 1951. Respondent argues that the trustees could determine that a reasonable period of time had elapsed without a ruling and would be obligated to return the trust funds to the petitioner. He also contends that by April 15, 1952, a reasonable period had elapsed and the trustees were then obligated to return to petitioner *276 the contributions made in 1951. Respondent contends that the trustees had in fact sought to secure a refund to the petitioner of its 1951 contributions. As to the possibility of a refund to the petitioner, the trustees had not attempted to secure a return of premiums from the Insurance Company. Any action taken in this respect was taken by Schuermann without knowledge on the part of the trustees. In any event, the premiums were never returned to the trustees or petitioner. The petitioner's contribution to the Trust Fund was never returned to it. The trustees did not in fact determine that a reasonable period had elapsed, and the respondent may not substitute his judgment for that of the trustees in this respect. The trustees' primary duty is to the cestui que trust and not to the settlor. See Trusts and Estates, Bogart, section 543 (1946). There is no evidence whatsoever to support a conclusion that the trustees were derelict in the performance of that duty. The taxpayer's actions were entirely consistent with the intent to establish a qualified pension trust in December 1951. The entire record establishes such an intent, and we have found its existence as a fact. The conditional *277 clause of Article XVIII is the only provision of the trust agreement which could cause the trust not to qualify under section 165(a). The conditions contained in that clause cannot alone form the basis for disqualification. Meldrum & Few-smith, Inc., supra; 555, Inc., supra; Surface Combustion Corporation, supra.To hold otherwise would be but to fashion a trap for the taxpayer out of its very effort to comply in good faith with the requirements of a complex statute and regulations. Because of the stipulation entered into by the parties herein, Decision will be entered under Rule 50. Footnotes
1. SEC. 165. EMPLOYEES' TRUSTS. (a) Exemption From Tax. - A trust forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall not be taxable under this supplement and no other provision of this supplement shall apply with respect to such trust or to its beneficiary - * * *
(2) if under the trust instrument it is impossible, at any time prior to the satisfaction of all liabilities with respect to employees and their beneficiaries under the trust, for any part of the corpus or income to be (within the taxable year or thereafter) used for, or diverted to, purposes other than for the exclusive benefit of his employees or their beneficiaries;↩
2. In 1945 the Commissioner ruled that similar conditions would not disqualify a trust. IT:PS (P.S. No. 47, Feb. 20, 1945). See also Revenue Ruling 59-309, 1959-38 C.B. 10↩ (September 21, 1959), IT:PS (P.S. No. 68, July 3, 1951).