WILCOX INVESTMENT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 112505, 112506. Promulgated March 13, 1944.

*Thomas B. Stoel, Esq.*, for the petitioner.
*E. A. Tonjes, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge*: These proceedings, duly consolidated, involve income taxes for the years 1938, 1939, and 1940. The petitions herein were filed for the purpose of redetermining the following deficiencies: $293.50 (1938), $150.40 (1939), and $271.27 (1940).

The only issue is whether the annual premiums paid by petitioner on what is denominated a "Retirement Annuity" contract, according to the terms of which a particular employee of petitioner would become entitled under certain conditions to receive an annual pension upon reaching the age of 60 in 1945, are deductible from petitioner's gross income in each of the taxable years.

The following stipulation of facts was filed in these proceedings:

1. Petitioner is a corporation organized and existing under the laws of the State of Oregon, with its principal office and place of business at Portland, Oregon. Its income tax returns for each of the calendar years 1938, 1939, and 1940 were filed with the Collector of Internal Revenue for the District of Oregon.

2. Since 1918 petitioner has employed Miss Ethel Thompson as bookkeeper and as secretary to petitioner's officers. To provide a pension for her at the age of 60, petitioner, on October 22, 1934, arranged for the issuance by The Pacific Mutual Life Insurance Company of a Retirement Annuity contract providing for the payment of a monthly life income to Miss Thompson, commencing October 22, 1945. A copy of said contract is attached hereto, marked "Exhibit A," and is hereby incorporated in this stipulation.

3. The above described contract requires the payment of an annual gross premium in the amount of $943.80. During the calendar years 1938, 1939, and 1940 petitioner paid to The Pacific Mutual Life Insurance Company net premiums in the following amounts:

| Year | Amount |
|------|--------|
| 1938 | $917. 19 |
| 1939 | 939. 99 |
| 1940 | 931. 63 |

and in its income tax returns for each of said years, deducted the amounts so paid from its gross income. The said amounts were not included in the income tax returns filed by Miss Thompson for the years 1938, 1939, and 1940 and were not taxed to her.

4. During each of the calendar years 1938, 1939, and 1940, petitioner paid to Miss Thompson in cash salary in the following amounts:

| Year | Amount |
|------|--------|
| 1938 | $2. 470. 00 |
| 1939 | 2, 470. 00 |
| 1940 | 2, 540. 00 |

and in its income tax returns for each of said years, deducted the amounts so paid from its gross income.

[1] 5. The amounts of $2,470.00 and $2,540.00, plus an amount equal to the annual premium on the above described contract paid by petitioner during the years

---

[1] Upon the trial of these cases, the parties further stipulated that the amounts named in paragraph 5, less the premiums, might equally be reasonable compensation for the services rendered by Miss Thompson.

1938, 1939, and 1940, is reasonable compensation for personal services actually rendered by Miss Thompson in the respective years.

6. In his determination of deficiencies in petitioner's income tax for each of the years 1938, 1939, and 1940, the respondent has disallowed the deduction from petitioner's gross income for each of said years of the amount of premium paid in said year as set forth in paragraph 3 above.

We adopt the above stipulation of facts as findings of fact herein. Material parts of the "Retirement Annuity" contract (hereinafter sometimes called the policy), which is attached to the stipulation and marked Exhibit "A," and which is incorporated herein in its entirety by reference, may be summarized as follows:

The Pacific Mutual Life Insurance Co. of California (hereinafter sometimes called the company). in consideration of an annual premium of $943.80 agreed: To pay a monthly life income of $75 commencing October 22, 1945, to Ethel Louise Thompson, annuitant; to pay the petitioner as the designated beneficiary certain sums of money if the annuitant died before the commencement of the life income or if the annuitant died before 100 monthly payments of the life income had been made; to advance interest to the annuitant at any time after one full year's premium had been paid the whole or any part of the cash surrender value; that the annuitant could, after the policy had been in effect one year. elect within three months after any default in payment of premium, but not later. to surrender the policy for a cash value, as tabulated, or to have the policy continued in force as a nonparticipating paid-up annuity payable on October 22, 1945, and under the same conditions but for a reduced amount; to pay certain sums of money to petitioner as death benefits, if the premiums were fully paid up and the annuitant died before any of the monthly income payments became due, or should death occur thereafter and before 100 payments should have been made, to pay the balance of the 100 payments commuted at 3½ percent. The policy contained the following table of values based upon an annual premium of $100:

| Cash surrender values | | Death benefits | |
|---|---|---|---|
| End of policy year | Amount | During policy year | Amount |
| 1 | $54 | 1 | $93 |
| 2 | 163 | 2 | 190 |
| 3 | 266 | 3 | 289 |
| 4 | 371 | 4 | 393 |
| 5 | 479 | 5 | 500 |
| 6 | 591 | 6 | 610 |
| 7 | 706 | 7 | 725 |
| 8 | 826 | 8 | 843 |
| 9 | 952 | 9 | 966 |
| 10 | 1,083 | 10 | 1,093 |
| 11 | 1,219 | 11 | 1,224 |
| 12 and subsequent | (¹) | 12 | 1,360 |
| | | 13 | 1,501 |
| | | 14 | 1,647 |
| | | 15 | 1,797 |

¹ An amount equal to the death benefit for the corresponding policy year.

The policy further provided that an assignment of the policy had to be made in writing; that the first 100 of the monthly income payments were to be increased by such excess interest earnings as the company allowed; that the annuitant could elect to receive dividends in cash or have same applied toward the payment of any premium or left to accumulate to the credit of the policy; that premiums left to accumulate to the credit of the policy would be added with interest to the death benefit payments to be made to the designated beneficiary if the annuitant died before the commencement of the monthly income payments.

The application for the policy, which is entitled "Application for Life Insurance," and which is attached to and made a part of the contract, was dated October 15, 1934, and signed by the annuitant, Ethel Louise Thompson. The applicant recites therein that she was born on November 20, 1885; that she is employed by Wilcox Investment Co. as a stenographer and bookkeeper; that she desires "insurance" in the amount of $75 per month to provide a retirement annuity at age 60; that dividends should be applied to reduce premiums; and that death benefits shall be payable to Wilcox Investment Co. (the petitioner herein).

The policy, dated October 22, 1934, bears the following endorsement of the same date, and over the signatures of the president and secretary of the company:

A written request therefor having been made by the Annuitant, it is hereby understood and agreed that the designation of Wilcox Investment Company, a corporation, its successors or assigns, as beneficiary under this Policy, is hereby made irrevocable, and that all right, title and interest in and to this Policy shall vest solely in said beneficiary, and that said beneficiary (except as hereinafter provided) shall be entitled to receive every benefit, exercise every right and enjoy every privilege otherwise conferred upon the Annuitant, anything in this Policy to the contrary notwithstanding.

It is specifically understood and agreed that any monthly income payment or payments to be made as provided under the conditions of this Policy, shall be made to the Annuitant without the consent of said Wilcox Investment Company, its successors or assigns: provided, however, that any excess interest earnings granted by the Company under such monthly life income will be paid annually to said Wilcox Investment Company, its successors or assigns, in lieu of being paid in conjunction with the monthly income payments to the Annuitant, anything in this Policy or this Agreement to the contrary notwithstanding.

We first consider petitioner's contention, that "The payments made by petitioner on the deferred annuity contract here involved were properly deducted by petitioner from its gross income in each of the years 1938, 1939, and 1940, as ordinary and necessary business ex-

pense," under section 23 (a) (1) of the Revenue Act of 1938 and the Internal Revenue Code.[2]  We can not agree.

Petitioner's position and rights in the matter depend not only on the terms of the policy itself, but also upon the endorsement set forth above, which appears on the back of the policy.  Both must be regarded together to get a true picture of the nature of the obligation petitioner has undertaken in connection with the policy.  See *Dobson* v. *Commissioner*, 320 U. S. 489.  An analysis of the policy in the light of the additional rights conferred upon the beneficiary by the endorsement demonstrates that petitioner, irrevocably designated as the beneficiary, had the right before the monthly income payments commenced to borrow money on the policy or to surrender the policy for a cash value.  At the end of the seventh year of the policy, the cash surrender value exceeded the amount of money paid in by petitioner as premiums.  Petitioner, as beneficiary, had the further right to receive certain death benefit payments in the event that the annuitant died before the monthly income payments commenced.  At the end of the fifth year of the policy, the death benefits were equal in amount to the money paid in by petitioner as premiums.

Petitioner could, therefore, obtain the return of all the money it had paid in as premiums before its employee acquired any vested right to receive the monthly income payments.  The contingent right of the annuitant to receive monthly income payments, if she lived until October 22, 1945, and the possibility of the annuitant's ever deriving any benefit from this policy, could thus be defeated by the uncontrolled action by petitioner at any time prior to October 22, 1945.  Even after payment of the monthly income payments had commenced, petitioner still retained a beneficial interest in the policy by reserving to itself the right to be paid annually any excess interest earnings granted by the company under the monthly life income; and if the annuitant died before 100 payments had been made to her, petitioner would receive the unpaid balance.  The only right the employee had under this policy was to receive the monthly income payments if she lived until October 22, 1945, and if the petitioner did nothing before that date to surrender the policy to the company.

Under such circumstances, the premiums paid, in our opinion, do not constitute ordinary and necessary expenses of the petitioner's business.  We perceive no significant distinction between the case in which a taxpayer, voluntarily, being under no contractual liability to do so,

---

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) EXPENSES.—

(1) IN GENERAL.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *

sets up a reserve on its books to which it credits annually $943.80, intending at the time it makes the book entry to pay this money to an employee at some future date as a pension, but retaining at all times full control over the disposition of the funds so set aside, and the facts in the instant case, where petitioner had incurred no enforceable obligation, contractual or otherwise, to its employee and was under no binding liability to the company to pay annually the premium called for in the policy. As has been pointed out, the annuitant could not acquire a present vested right to the funds annually paid by petitioner as premiums, until October 22, 1945. In the instant case, petitioner's right to reinvest itself with the funds annually paid by it to the company was, as a practical matter, without limitation up until October 22, 1945, when the monthly income payments were to begin.

The principle is well established that the mere fact that a prudent business man sets up reserves to meet contingent liabilities does not mean that they are allowable as deductions. *Lucas v. American Code Co.*, 280 U. S. 445. In *Oxford Institute*, 33 B. T. A. 1136 (1138, 1139), we said:

Contingent bonuses for employees have been held not accruable as expenses until the occurrence of the event on which liability depends. *S. Naitove & Co.*, 8 B. T. A. 580; affd., 32 Fed. (2d) 949; certiorari denied, 280 U. S. 582. See also *Fuller Brush Co.*, 8 B. T. A. 855; *Commercial Electrical Supply Co.*, 8 B. T. A. 986: *Western States Envelope Co.*, 10 B. T. A. 856; *Horn & Hardart Baking Co.*, 19 B. T. A. 704. In all of these cases the corporations made no present payments on account of the contingent bonuses, but merely attempted to accrue them as expenses on their books, and they were disallowed.

The present case presents a different fact situation. The corporation here was under a binding liability to make monthly payments to a trust of all bonuses accrued for its employees. *Hibbard, Spencer, Bartlett & Co.*, 5 B. T. A. 464; *Elgin National Watch Co.*, 17 B. T. A. 339. Each month the corporation actually paid out and expended as required by its irrevocable trust agreement the sums for which deduction is sought here. The sums were put beyond the control of the corporation. The fact that they were subject to be paid back to the corporation on the happening of contingencies within the control of the employees does not change their character as present expenses to the corporation. They are deductible as "expenses paid * * * during the taxable year."

Other cases reaching the same general result as those cited in the first paragraph quoted from the *Oxford Institute* case are *Mann v. Commissioner*, 35 Fed. (2d) 873 (where the taxpayer was on a cash basis): *Block & Kohner Mercantile Co. v. United States*, 37 Fed. (2d) 877: *Kaufman Department Stores, Inc. v. Commissioner*, 34 Fed. (2d) 257: *East Coast Motors, Inc.*, 35 B. T. A. 212 (217).

The result in the instant cases is governed by the principles underlying the cases cited in the *Oxford Institute* case. The facts in the instant cases bring them within the cases cited in the first paragraph

quoted therefrom: also within the cases last above cited. The sums paid by petitioner were not put beyond its control. Petitioner was under no binding liability to pay the annual premium. No trust was created. Petitioner's right to obtain the return of the annual premiums paid by it as cash surrender values, or death benefits, was in no way subject to the control of the employee-annuitant. The petitioner was, in effect. making an investment. which it might or might not later use to pension an employee. The contributions to such fund. in the form of premiums, were not ordinary and necessary *expenses*, in carrying on trade or business. under section 23 (a) (1) of the Revenue Act of 1938 and of the Internal Revenue Code. In the light of the above conclusion, it is unnecessary to decide the other issue, as to whether the policy was one of life insurance and the premiums not deductible under section 24 (a) (4) of the Revenue Act of 1938 and of the Internal Revenue Code.

*Decision will be entered for the respondent.*