## ·COMMISSIONER OF INTERNAL REVE-NUE v. SURFACE COMBUSTION CORPORATION.

### ·No. 10842.

United States Court of Appeals
Sixth Circuit.

April 12, 1950.

Harry Baum, Washington, D. C. (Theron Lamar Caudle, Ellis N. Slack, and Harry Baum, Washington, D. C., on the brief), for petitioner.

John Kendrick, Toledo, Ohio (John J. Kendrick and G. Charles Scharfy, Toledo, Ohio, on the brief), for respondent.

Before SIMONS, ALLEN and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The Commissioner of Internal Revenue seeks a review of the order of the Tax Court of February 20, 1948 as amended by order of March 17, 1948, involving income and excess profits tax deficiences for the year 1941. He contends that the Tax Court was in error in holding that contributions by the taxpayer in 1941 to two employees' trust funds constituted proper deductions from gross income under § 23(a) (1) (A) Internal Revenue Code, 26 U.S.C. A. § 23(a) (1) (A).

The facts are given in detail in the Tax Court's findings and opinion reported in 9

T.C. 631. The more important ones can be summarized as follows: The taxpayer, Surface Combustion Corporation, is a New York corporation organized in 1916 and maintaining its principle place of business in Toledo, Ohio. Its business is the designing, manufacture and installation of industrial furnaces, space heating equipment and air-conditioning equipment. Prior to December 30, 1941, it had for a number of years maintained a bonus plan for its sales employees and key executives, maintaining base salaries at a minimum level. In December 1941, it had 981 employees. In an average normal business year it had from 600 to 700 employees. In the latter part of 1941, the management concluded that the unprecedented earnings during 1941 had rendered unsound the bases for computing the bonuses under the then existing plan. It was considered desirable to devise a new plan which would set aside funds to provide against the rate of decrease in compensation which would normally follow with decreased earnings, which would reduce the amount of compensation payable under the existing plans and freeze such compensation during the war years, and which would at the same time provide such satisfactory compensation to the key employees as would result in their continued loyalty and cooperation. It was decided that these purposes could best be accomplished by paying cash bonuses in amounts considerably less than those which would have been payable under the old plan, and by creating two trust funds, one for the executive group and one for the sales group.

On December 30, 1941, the taxpayer created two such trusts and on that date paid $175,000 to the trustees of the sales employees' trust, and $175,000 to the trustees of the executive employees' trust. Two of the trustees in each trust were the president of the taxpayer and its vice president and sales manager. The third trustee of the sales employees' trust was a senior salesman and the third of the executive employees' trust was the taxpayer's vice president in charge of engineering. No trustee was a stockholder of the taxpayer, which was wholly owned by General Properties, Inc.

The provisions of the two trusts were similar in all essential respects. Their stated purpose was to reduce wide fluctuations in the compensation of taxpayer's employees and to provide certain health, disability and death benefits. They provided: (a) Each employee was to be allocated a share in the trust fund in the ratio which his average total compensation for the previous five years (or years employed if less than five), bore to the total average compensation of all the employees; (b) Payments to an employee were to be made from such allocated share in the event his compensation for any fiscal year ending November 30 fell below 90% of his average yearly compensation for the preceding five years (or years of employment, if less than five), in which event he was to receive an amount sufficient to bring his compensation up to the 90% level; in the event of illness or disability causing permanent removal from taxpayer's payroll, or in the event taxpayer or its assignees ceased business, the employee (or in case of death, his heirs or legatees) was to receive his allocated portion; (c) The trusts were irrevocable, except that if the Commissioner of Internal Revenue ruled that they did not qualify for exemption under § 165 I. R. C., 26 U.S.C.A. § 165, the taxpayer reserved the privilege of electing to terminate the trusts and requiring the trustees to repay the funds to it; (d) The trustees were custodians of the funds, in complete charge of their investment, administration and distribution; (e) If any employee left the taxpayer's employ, or was discharged, his interest in the fund was forfeited and was to be allocated among the remaining participants; (f) Taxpayer reserved the right to contribute further amounts to the trusts, and to designate additional employees as beneficiaries by depositing additional funds to be allocated to them. Modification or amendment of the agreement might be made upon agreement of the taxpayer and two-thirds of the participating employees. On September 30, 1945, the taxpayer and the employees named in the trusts executed a "Declaration of Intention for Purpose of Clarification," which provided that the trusts were irrevocable except in the event

that if the Commissioner of Internal Revenue should decide that the contributions to the funds were not deductible for federal income and excess profits tax purposes in 1941, and such ruling became final, taxpayer was to have the right to terminate the trusts and receive the repayment of its contributions.

The employees who were participants in the trusts were practically all technical experts who had the training and experience requisite to the giving of effective service to the taxpayer. Taxpayer's business required employees who were qualified industrial engineers. In 1941, it was of crucial importance that it retain the services of its qualified personnel in view of the expansion of its business and its basic importance in industries engaged in the war effort. In that year, it was impossible to employ experienced engineers, and other companies were endeavoring to employ some of the taxpayer's employees.

If the bonus plans had not been revised the total bonuses payable to executive and sales employees would have aggregated about $952,178. The 34 beneficiaries of the executive employees' trust received in 1941 a total base compensation of $171,130 and cash bonuses of $141,107. Their individual total compensation, including salary, bonus and credit in the trust fund, ranged from $51,000 to $5,400. The 38 beneficiaries of the sales employees' trust received in 1941 a total base compensation of $149,034 and cash bonuses of $144,300. Their individual total compensations, including salary, bonus and credit in the trust fund, ranged from $19,995 to $5,740.

In its 1941 return the taxpayer claimed as a deduction, the two payments to the trusts of $175,000 each. The Commissioner disallowed the deduction, holding that they were not deductible under either § 23 (a) or (p) of the Internal Revenue Code. The Tax Court held that the total compensation paid in 1941 to each participant under the two trusts, including the amount credited to such participant, constituted reasonable compensation for services rendered to petitioner in 1941 by each such participant.

The taxpayer claims the deduction as an ordinary and necessary expense under § 23 (a) Internal Revenue Code on three alternative grounds: (1) As reasonable compensation to the employees covered by the trust, (2) because the trusts qualified for tax exemption under § 165 Internal Revenue Code, and (3) because in disposing of claims under the pre-existing bonus plans the payments were ordinary and necessary business expenses.

The Commissioner contends that the contributions to the trusts are not compensation paid within the meaning of § 23(a) of the Internal Revenue Code, in that the employees had no vested right to any part of the funds, that one of the express purposes of the trusts was the compensation of the employees in some future years for services to be rendered later, and that the taxpayer could under certain conditions recover its contributions to the funds.

■ Section 23(a) (1) (A) Internal Revenue Code provides that in computing net income there shall be allowed as deductions "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *." In Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212, Justice Cardozo discussed the meaning of "ordinary and necessary expenses," pointing out that although payments might be necessary in the development of a taxpayer's business, they could at the same time be charges upon capital rather than ordinary operating expenses. Under the facts stated in the present case, it seems clear that the payments under consideration were necessary in order to meet the needs of the times and to continue the efficient operation of taxpayer's business. Our real problem is to decide whether they constituted "compensation for personal services actually rendered", as held by the Tax Court, or were in the nature of capital expenditure, as contended by the Commissioner.

On the facts of this case, and on the authorities hereinafter cited, we agree with the ruling of the Tax Court that the pay-.

ments constituted reasonable compensation for services rendered in 1941 by the participants. As pointed out by the Tax Court, the establishment of the two trusts conferred upon the participating employees rights which were of a substantial value, rather than the indefinite, intangible, uncertain rights involved in cases relied upon by the Commissioner, where a different conclusion was reached. In the present case, the participating employee is entitled to a distribution from his allocated share upon the happening of a certain event, such as reduction of salary. If he becomes permanently disabled, he is entitled to the full amount credited to him; if he dies, his legatees or heirs at law receive the entire amount; and if his services are no longer required in the conduct of the business, he receives the entire amount allocated to him. Such rights are not dependent upon the discretion of the trustees. We are of the opinion that such rights based on services previously rendered have enough certainty and substantial value to the employee to constitute "compensation" paid by the employer within the provisions of the statute. Gisholt Machine Co., 4 T.C. 699; Weil Clothing Co., 13 T.C. 873, December 1, 1949; Forcum-James Co., 7 T.C. 1195, 1219; Alvin Glen Hall, 7 T.C. 1220; Lincoln Electric Co. v. Commissioner, 6 Cir., 162 F.2d 379; Taylor-Logan Co v. White, 1 Cir., 65 F.2d 994. The payments were made to preserve an existing asset rather than to acquire a new one, and should not be capitalized. United States v. E. L. Bruce Co., 6 Cir., 180 F.2d 846; Peerless Stages v. Commissioner, 9 Cir., 125 F.2d 869, 871; Elgin National Watch Co., 17 B. T.A. 339, 359.

The Commissioner relies heavily for reversal upon Roberts Filter Mfg. Co. v. Commissioner, 3 Cir., 174 F.2d 79, and Robertson v. Steele's Mills, 4 Cir., 172 F.2d 817. Both of these decisions were considered and held inapplicable by the Tax Court in Weil Clothing Co, supra. The factual differences are material with respect to the certainty and character of the rights conferred upon the employees. In the Roberts Filter Mfg. Co. case, the payment was made to create a trust in which the employer dominated the board of man-

agers controlling the expenditure of the fund, the board of managers having wide powers in determining the benefits and their recipients. In pointing out the illusory nature of the so-called rights provided, the opinion in that case states [174 F.2d 84] "Petitioner did little more than promise that, at some time in the indefinite future, it would distribute a fund, of uncertain size, in undetermined proportions or amounts, among a fraction of its employees." In Robertson v. Steel's Mills the fund was dispensable at the sole discretion of a committee, dominated by the employer. Employees in the year of the contribution had no allocated share in the fund; what they might acquire in the future was subject to no predetermined measurement. In the present case, the rights received by the employee immediately upon the creation of the trust are well defined, of substantial value, and, considered from a practical viewpoint, not subject to diminution or forfeiture in the discretion of, or by the arbitrary action of, the employer. The effect of such differences in the terms of employees' trusts was pointed out in Roberts Filter Mfg. Co. v. Commissioner, supra, in comparing the facts of that case with the facts in Lincoln Electric Co. v. Commissioner, supra, from this Circuit. As stated in Welch v. Helvering, supra, each case involves the appreciation of particular situations, at times with borderline conclusions.

We do not consider the benefits or compensation so received by the employees as compensation to employees for services to be rendered in future years, rather than for "services actually rendered," as required by the statute. The fundamental purpose of the trusts was to retain trained and efficient personnel in the employ of the company, a vital necessity at that time if the company was to continue with its wartime production. The employee's allocated interest in the trust was given to him for that purpose. It was based on services actually rendered over the preceding five years. This share was a definite amount and was not increased by services in later years. It became an asset of the employee in 1941. Its subsequent distribution was dependent upon the happening of certain events, such as decrease in salary, disabil-

448

ity, or death. Instead of being a payment for services in a later year, it was a partial distribution in a later year of a previously acquired asset, the decrease in salary being the event which authorized the distribution. A collateral but nevertheless material factor was to replace an existing unsatisfactory bonus plan, which would have totaled about $952,178 as compared with $350,000 paid into the trusts. The actual payment by the company was made in 1941. There is nothing unusual or invalid in paying compensation for services in a year subsequent to that in which the services were rendered. Lucas v. Ox Fibre Brush Co., 281 U.S. 115, 119, 50 S.Ct. 273, 74 L.Ed. 733. The fact that the benefit to be obtained therefrom would extend over a period of years in the future does not prevent the payment from being a current business expense. American Rolling Mill Co. v. Commissioner, 6 Cir., 41 F.2d 314; Lincoln Electric Co. v. Commissioner, supra. Nor do we believe it material to the present inquiry that the actual receipt of such compensation by the employee was postponed until later years. Our question is not when was the income received by the employees. See Frazer v. Commissioner, 6 Cir., 157 F. 2d 282, but is when was the expenditure made by the company. See Lucas v. Ox Fibre Brush Co., supra. In addition, valuable rights acquired through the creation of the trusts were not dependent upon any continued length of service in subsequent years. Disability benefits, death benefits, and benefits in the event the employee's services were not required by the business of the taxpayer were payable upon the happening of certain events regardless of lack of continued service in 1942. A fair overall appraisal of the plan requires us to reject the Commissioner's contention that the compensation was for services to be rendered in the future.

■ We also reject the Commissioner's contention that the taxpayer had not irrevocably parted with the funds, since they would be returned to it if the contributions were ultimately held to be nondeductible. Such a contingency was entirely within the control of the Commissioner. So far as the taxpayer was concerned, the payments were irrevocable by it. Oxford Institute,

33 B.T.A. 1136. For several years prior to March 1, 1945 the Commissioner approved profit sharing and pension plans and allowed deductions therefor where such payments were so conditioned. Montgomery, Federal Taxes, Vol. 1, p. 533, 1948-1949 Edition.

■ We find no merit in the contention that the deduction should not be allowed because of tax avoidance features of the plan. Tax avoidance is not invalid when the transaction is real, bona fide one, and not merely a sham. United States v. Cummins Distilleries Corp., 6 Cir., 166 F. 2d 17, 20. No contention is made that the trusts were only colorable or that the payments were not actually and irrevocably made.

The Tax Court did not rule upon the question whether the trusts qualified for tax exemption under § 165, Internal Revenue Code, or whether the payments constituted an ordinary and necessary business expense in liquidating an existing bonus liability, and we accordingly do not discuss those aspects of the case.

The judgment is affirmed.