*Decisions will be entered under Rule 50.*

WILLIAM D. O'BRIEN AND GERTRUDE O'BRIEN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5932–65. Filed August 10, 1966.

*Edward R. Smith* and *William Norton Baker*, for the petitioners.
*Williard A. Herbert*, for the respondent.

DAWSON, *Judge:* Respondent determined a deficiency in income tax against petitioners for the taxable year 1964 in the amount of $6,079.90.

The sole issue for decision is whether the petitioners are entitled to deduct as a charitable contribution under section 170, I.R.C. 1954, the value of a remainder interest in property given by them in 1964 to the William D. and Gertrude T. O'Brien Charitable Trust. An automatic adjustment relating to a claimed medical expense deduction can be given effect in the Rule 50 computation.

### FINDINGS OF FACT

Some of the facts have been stipulated by the parties. The stipulation of facts and the exhibits attached thereto are incorporated herein and made a part of our findings by this reference.

William D. O'Brien and Gertrude O'Brien (hereafter sometimes called petitioners) are husband and wife residing in Lubbock, Tex. They filed a joint Federal income tax return for the year 1964 with the district director of internal revenue at Dallas, Tex.

Petitioners are persons of substantial economic means, having a net worth in excess of $840,000. Their annual income greatly exceeds their living expenses. They have no children. They have an intense interest in benefiting certain Texas charities.

On June 30, 1964, petitioners executed a declaration of trust creating the William D. and Gertrude T. O'Brien Charitable Trust (hereafter called the trust) of which they were the life income beneficiaries. The declaration of trust provides as follows:

THIS DECLARATION OF TRUST made this 30th day of June, 1964, by and between WILLIAM D. O'BRIEN and wife, GERTRUDE T. O'BRIEN, of Lubbock, Lubbock County, Texas, herein sometimes referred to as "Trustors", and sometimes referred to as "Trustees";

*WITNESSETH:*

THAT Trustors hereby declare that they have, by delivery executed simultaneously herewith, irrevocably placed in trust the sum of fifty dollars ($50.00) which shall constitute the initial Trust Estate of the irrevocable Trust created herein, and that they shall, as Trustees, continue to hold such property in Trust under the terms hereof.

To HAVE AND TO HOLD, all and singular, the above-described property, and all other properties, real or personal, which Trustors, or any other persons, may at any time add or cause to be added to the Trust Estate, in any manner, together with all and singular the rights, hereditaments and appurtenances unto the same belonging or in anywise incident or appertaining thereto, in trust, nevertheless, as hereinafter set out.

1. The property described above as being placed in trust shall constitute the initial Trust Estate of "THE WILLIAM D. AND GERTRUDE T. O'BRIEN CHARITABLE TRUST", herein sometimes referred as "the Trust". Such Trust shall terminate the day after Trustors have both died, and such Trust Estate shall be distributed, outright, upon such termination date, to such one or more charities, in such shares and proportions as Trustors may appoint by Will, that portion of such Trust Estate attributable to gifts from William D. O'Brien being distributed in accordance with his Will, and that portion of such Trust Estate attributable to gifts from Gertrude T. O'Brien being distributed

in accordance with her Will, and the balance, if any, being distributed to the same charities in the same proportions, provided that all gifts from Trustors or either of them while both Trustors are living shall be deemed made equally by Trustors. Any portion of such Trust Estate not effectively appointed shall be distributed, upon such termination date, three-fourths (¾ths) to Cal Farley's Boys Ranch, of Amarillo, Texas, and one-fourth (¼th) to Texas Technological College, of Lubbock, Texas, it being Trustors' desire that the Board of Directors of such College shall manage the latter such gift and use the income therefrom to provide scholarship and, or other appropriate financial assistance and, or loans to deserving and needy students, provided that if either such named institution is not a charity upon such termination date, the entire Trust Estate shall be distributed to the other such named institution, but if neither such named institution is a charity upon such termination date, such Trust Estate shall then be distributed instead to such one or more charities as, in the discretion of the Trustee, are in the best interests of the citizens of Lubbock County, Texas.

2. The term "charity" as used herein shall mean any religious, charitable, scientific, literary, or educational corporation, trust, fund, or foundation, a gift to which would qualify as a charitable contribution or transfer under the provisions of Section 170 (in the case of a lifetime gift) and section 2055 (in the case of a testamentary transfer) of the Internal Revenue Code of 1954 as it exists on the date of execution of this instrument and which agrees, by written instrument delivered to the Trustee prior to any distribution to it hereunder, that all distributions made to it hereunder shall be used within the State of Texas in such manner that the charitable portion of any gift to such Trust would qualify for the maximum Texas inheritance tax charitable exemption under the laws of the State of Texas as they exist on the date of execution of this instrument.

3. While both Trustors are living, the net income of the Trust Estate of the Trust shall be distributed, currently and periodically, but at least annually, to Trustors. During the term, if any, of the Trust following the death of one of Trustors, the net income of such Trust Estate shall be distributed and, or accumulated as follows:

(a) From that portion, if any, of such Trust Estate attributable to testamentary gifts from such deceased Trustor, distributions shall be made under the provisions of this subparagraph. If the surviving Trustor's own income, when consumed, is not sufficient to maintain such Trustor in the standard of living to which such Trustor is accustomed on the date of such deceased Trustor's death, the Trustee shall distribute to such surviving Trustor such amounts of the current net income, from such portion, as shall be necessary to so maintain such Trustor. Any part of such current net income not so distributed shall be accumulated and added to corpus.

(b) All net income from the balance of such Trust Estate shall be distributed, currently and periodically, but at least annually, to such surviving Trustor.

4. Distributions in addition to those described in Paragraph 3 may be made to Trustors under the provisions of this paragraph. Anything to the contrary herein notwithstanding, no distribution under the provisions of this paragraph shall be made from that part of the corpus of the Trust which is attributable to lifetime gifts made by Trustors or either of them. The income of Trustors has been amply sufficient to maintain both of them in their accustomed standard of living. For this reason Trustors do not anticipate that it will be necessary to invade any part of the corpus of such Trust Estate to support themselves or either of them. Nevertheless, if the income of a Trustor (including any income available to such Trustor hereunder) is not sufficient to maintain such Trustor in the standard of living to which such Trustor is accustomed at the date of

execution of this instrument, and if such Trustor's own estate has been consumed, the Trustees may distribute to such Trustor, from time to time, such amounts of the Trust Estate of such Trust as shall be necessary to so maintain such Trustor. Anything to the contrary herein notwithstanding, in order to protect the remainder interest of charity hereunder, should a Trustor, after the date of any gift from which distributions may be made under the provisions of this paragraph, substantially reduce his or her own estate through gifts without reserving to himself or herself for life the income therefrom or use thereof, no distributions shall be made to such Trustor under the provisions of this paragraph; provided that gifts of the size and type customarily made by such Trustor prior to the date of execution of this instrument shall not be considered as substantially reducing his or her estate.

5. Except as otherwise provided in this paragraph, the "net income" of the Trust shall be determined by the Trustees by the use of accepted accounting principles, whether or not such principles are in accordance with the provisions of the Texas Trust Act. It is specifically provided that the Trustees shall set aside out of the income of the Trust an amount each year which would be considered adequate, according to accepted accounting and engineering principles, to maintain the corpus of the Trust intact insofar as any wasting or depreciating assets are concerned, and for this purpose the initial corpus value shall be used as the cost of any assets contributed to the Trust. It is further specifically provided that capital gains and losses shall be credited or charged to corpus and not to income, and that all dividends, if any, from any regulated investment company or real estate investment trust, as such terms are defined in the Internal Revenue Code, which represent capital gains realized by such company or trust from the sale of investments owned by it shall be treated as corpus and not as income.

6. The term "initial corpus value" as used herein shall mean the fair market value, as finally determined for Federal income tax purposes, of the initial Trust Estate of the Trust created herein on the date of execution of this instrument, plus the value, so determined (or in the case of a testamentary gift to such Trust, as finally determined for Federal estate tax purposes), of any additional contributions under the provisions of Paragraph 10, on the date such respective additional contributions are made.

7. Anything to the contrary herein notwithstanding, but subject to the provisions of Paragraph 16, the Trustees, with respect to the Trust Estate, shall not:

(a) Lend any part thereof, without receipt of adequate security and a reasonable rate of interest, to;

(b) Pay any part thereof in excess of a reasonable allowance for salaries or other compensation for personal services actually rendered, to;

(c) Make any part of its services or facilities available on a preferential basis to;

(d) Purchase any securities or other property for more than an adequate consideration in money or money's worth, from;

(e) Sell any securities or other property for less than adequate consideration in money or money's worth, to;

(f) Engage in any other transaction which diverts any substantial part thereof, to;

Trustors, a member of the family (as defined in section 267(c)(4) of the 1954 Internal Revenue Code as it now exists) of either Trustor, or a corporation controlled by a Trustor through ownership, directly or indirectly, of fifty per cent (50%) or more of the total combined voting power of all classes of stock entitled to vote or fifty per cent (50%) or more of the total value of shares of all classes of stock of the corporation.

8. If either Trustor, for any reason, shall fail or cease to act as Trustee, the other Trustor shall act or continue to act as sole Trustee, but if both Trustors, for any reason, shall fail or cease to act, the individual or bank appointed by Trustors, or whichever of them is legally capable of acting if only one is so capable, by recordable instrument, shall serve as substitute or successor Trustee of the Trust, but if neither Trustor is acting and no such appointee is acting, AMERICAN STATE BANK, of Lubbock, Texas, shall serve as substitute or successor Trustee hereunder, provided that such Trustors or Trustor, by written instrument delivered to any Trustee then acting, may remove and replace any such Trustee with another Trustee. No bond or other security shall be required of any Trustee hereunder for any purpose unless requested in writing by the Attorney General of Texas.

9. Any Trustee may resign by giving thirty (30) days' written notice of such resignation to the Attorney General of Texas and to the then living Trustors.

10. This Trust Agreement and the Trust hereby created are irrevocable; neither Trustors nor any one else shall have the right or power to revoke, alter, amend or change this Trust Agreement or any provision thereof, except that Trustors and any other persons may add to the corpus of the Trust any property deemed acceptable by the Trustees. Nothing in this paragraph shall prevent the repayment, if any, described in Paragraph 16.

11. The term "Trust Estate" shall mean all properties, real or personal, however and whenever acquired, which may belong to the Trust.

12. No part of the Trust Estate, under any circumstances, shall ever be liable for or charged with any of the debts, liabilities or obligations of any beneficiary, or subject to seizure by any claimant or creditor of any beneficiary; no beneficiary, under any circumstances, shall have the power to assign, convey, pledge, charge or otherwise encumber or in any manner anticipate or dispose of such beneficiary's interest in any Trust Estate until the same shall have been actually transferred, conveyed, or paid over to such beneficiary free and clear of such Trust.

13. The situs of the administration of the Trust hereby created and provided for shall be, and is hereby fixed, in Texas, and it is directed that in respect of the administration and validity of the Trust, wherever possible, the laws of the State of Texas shall control.

14. To carry out the purposes of the Trust created herein, and subject to any limitations stated elsewhere herein (including specifically, but not by way of limitation, those described in Paragraph 7), in addition to the rights, privileges and powers elsewhere herein conferred upon and vested in the Trustees and those now or hereafter conferred by law, the Trustees shall also have, but not by way of limitation, the following rights, privileges and powers:

(a) To hold, manage, control, collect and use the Trust Estate in accordance with the terms of this instrument.

(b) To sell (for cash or on credit, or both), exchange or otherwise dispose of all or any part of the Trust Estate, publicly or privately, and to lease, rent, loan, mortgage (including the making of purchase money mortgages), pledge or otherwise encumber, the whole or any part of the Trust Estate, and to loan or borrow money in any manner (including by joint and several obligations) with or without security; provided that neither Trustors, nor any member of their families, nor any related corporation, as described in Paragraph 7, may borrow from the Trust Estate without giving adequate security and paying reasonable interest. All privileges and powers set forth in this instrument may be exercised upon such terms, regardless of the duration of the Trust, as the Trustees may deem advisable unless the contrary is expressly stated.

(c) To invest, reinvest, pay, expend or otherwise apply the Trust Estate for any purpose, in any manner, and in property of any description whatsoever (including, but not limited to, oil, gas and other mineral interests, common stock, shares of investment trusts or companies, unsecured obligations, other than those of Trustors and their families and related corporations as described in Paragraph 7, non-income producing and wasting property, and property located anywhere in the world), to make and, or to hold investments of any part of the Trust Estate in common or undivided interests with any other persons or entities, including property in which any Trustee hereunder, individually or otherwise, may hold a common or undivided interest, and to deal with any person, corporation or entity, regardless of any relationship of any Trustee to, or identity of such Trustee with, such person, corporation or entity. Such investment powers shall not be restricted to any class of investments which fiduciaries under any character of trust are permitted by law or any regulation to make, and may be exercised without regard to any requirement of diversification as to kind or amount.

(d) To make oil, gas and mineral leases covering any part of the Trust Estate; to pool or unitize, and to make leases giving the lessee the power to pool or unitize any or all of the properties of the Trust Estate with properties of other persons, corporations or Trusts for the purposes of developing and producing oil, gas and, or other minerals therefrom; to enter into contracts and agreements for or in respect of the installation and, or operation of absorption, repressuring and, or other processing plants; to drill or contract for the drilling of wells for gas, oil, or other minerals; to make "dry hole" or "bottom hole" contributions and, or to contract or arrange for any other act or thing, whether or not the same be now or hereafter recognized or contemplated as common or proper practice by or among those engaged in the business of prospecting for, developing, producing, processing, transporting and, or marketing any such minerals which may be deemed by the Trustees to be advantageous to the Trust Estate.

(e) This instrument shall always be construed in favor of the validity of any act or omission by or of the Trustees; and the Trustees are also authorized to exercise all rights, powers, options and privileges now or hereafter granted to, provided for or vested in trustees under the Texas Trust Act. As far as possible, no subsequent legislation or regulation shall be in limitation of the rights, powers or privileges granted herein or in said Texas Trust Act as it exists at the execution hereof. Generally, and except as limited by the foregoing, the Trustees shall hold, manage, control, use, invest and reinvest, and dispose of each Trust Estate in all things, under all circumstances and to the same extent as if the Trustees were the owners thereof in fee simple, subject only to the terms hereof.

The foregoing powers of the Trustees shall exist for the term of such Trust only, but until all of the Trust Estate of such Trust has been distributed, the Trustees shall have powers identical to the foregoing.

15. Anything to the contrary in Paragraph 14 notwithstanding the Trust assets shall be invested with due regard for, and in such a way as to not unreasonably endanger or jeopardize, the interests of charity hereunder. No third person shall be liable because of the provisions of this paragraph.

16. Any inter vivos contribution to the Trust created hereunder is subject to the condition that such contribution shall be repaid to the contributor by the Trustees, without liability to the Trustees or any other person or entity, but only in the event and to the extent that the Commissioner of Internal Revenue does not allow as a deduction for income and gift tax purposes for the taxable and, or calendar year of the contributor in which such contribution was made, the value of the charitable remainder interest, hereinabove described, in such contributed property, such value being determined on the basis of such contributor's

age under such Commissioner's valuation tables for remainder interests. Nothing in this paragraph shall cause repayment of any contribution if such Commissioner denies an income tax deduction for such a charitable remainder interest only because the contributor's charitable contributions exceeded the maximum amount deductible for the year of such contribution.

17. The bank Trustee shall be entitled to receive reasonable compensation for services actually rendered by it to the Trust Estate, but such compensation shall not exceed the fees which would be considered customary for payment to banks in Lubbock County, Texas, for such services at the time such services are rendered. Any Trustee shall be entitled to reimbursement of expenses reasonably incurred on behalf of the Trust Estate.

18. Any power to appoint by Will given a Trustor under the provisions of Paragraph 1 may be exercised only by a separate clause in the Will of such Trustor which clause identifies the power by specific reference and disposes of no property other than property subject to the power.

19. Trustors, by this Declaration of Trust accept the Trust herein created and provided and accept all of the rights, powers, privileges, duties and responsibilities of the Trustees hereunder and agree that they will exercise and perform the same in accordance with the terms and provisions contained herein.

IN WITNESS WHEREOF, Trustors hereunto set their hands the day and year first above written.

WILLIAM D. O'BRIEN

GERTRUDE T. O'BRIEN

The Texas Technological College and Cal Farley's Boys Ranch are charitable organizations within the meaning of section 170 of the Internal Revenue Code of 1954.[1]

Simultaneously with the execution of the declaration of trust and in accordance with its terms, the petitioners placed $50 cash in the trust. Petitioners also had their individual wills drafted so that, except for one specific bequest of $25,000 in Gertrude O'Brien's will, their entire estates poured over into the trust corpus. Petitioners reserved in the trust instrument the right to appoint by will other qualified charitable beneficiaries of the trust.

Petitioners own 400 acres of farmland on which they conduct a commerical farming operation. On December 31, 1964, petitioners executed a warranty deed conveying to the trust an undivided 10-percent interest in the 400 acres of farmland and improvements thereon. Such deed and the declaration of trust were recorded in the public records in Lamb County, Tex., on December 31, 1964. Petitioners continued their commercial farming operation subsequent to the conveyance of the undivided 10-percent interest therein to the trust. On December 31, 1964, the net assets of the trust consisted of the $50 initial cash contribution (plus interest for 6 months) and the interest in the farmland.

By a correction instrument dated June 1, 1964, executed by petitioners and by the attorney general of the State of Texas on behalf of the

---

[1] All statutory references herein are to the Internal Revenue Code of 1954 unless otherwise indicated.

public interest in the Texas charities involved, an error in the original declaration of trust involving the computation of the charitable remainder interest was corrected.

In their joint Federal income tax return for 1964 the petitioners claimed a charitable contribution deduction to the "William D. and Gertrude O'Brien Charitable Trust" in the total amount of $11,597.15, computed [2] as follows:

| | | |
|---|---:|---:|
| Market value of 400 acres of land | | $200,000.00 |
| 10% thereof | | 20,000.00 |
| Adjustments: Sec. 1245 depreciation: | | |
| 1962 | $1,111.09 | |
| 1963 | 1,063.87 | |
| 1964 | 1,570.74 | |
| Total | 3,745.70 | |
| 10% | | 374.57 |
| Net gift | | 19,625.43 |
| Remainder interest computed at 58.839% | | 11,547.15 |
| Add contribution in cash | | 50.00 |
| Total contribution | | 11,597.15 |

Petitioners requested a ruling from respondent that the trust be held a charitable trust exempt from Federal income tax. This request was denied in a letter received by the petitioners from respondent in 1964 holding that the trust was not exempt from Federal income tax and that any contributions to the trust would not be deductible.

William D. and Gertrude O'Brien were 64 and 69 years of age, respectively, in December 1964.

William D. O'Brien is familiar with double entry accounting principles and maintains a double entry set of books for his own personal affairs. He also maintains a double entry set of books for the William D. and Gertrude T. O'Brien Charitable Trust. He has established adequate cash reserves so as to maintain the value of the trust corpus as certain trust assets depreciate in value. Petitioners have built up this reserve by setting aside 10 percent of the total farm income, although they are the life income beneficiaries of the trust and entitled to use such income without restriction.

Petitioners did not file a gift tax return, listing the property they transferred to the trust in 1964, because they were advised by their attorney that the gift tax regulations do not require the filing of a return when the donors retain the right to change beneficiaries since the gift is not complete for gift tax purposes.

Respondent's notice of deficiency dated September 28, 1965, disal-

---

[2] Respondent does not contest either the value the petitioners have assigned to the farmland or their computation of the remainder interest.

lowing the claimed charitable deduction, contained the following explanation of adjustment:

It is determined that The William D. and Gertrude T. O'Brien Charitable Trust is an organization which is not exempt from taxation within the meaning of the Internal Revenue Code of 1954. It is also determined that your claimed contributions to the said trust in the amount of $11,597.15 are not an allowable deduction under the Internal Revenue Code of 1954. Accordingly the deduction has been disallowed.

On December 30, 1965, petitioners, by warranty deed, conveyed a further undivided 8-percent interest in their farm and improvements to the trust. They have at all times fully complied with the terms of the trust.

### OPINION

Respondent attacks the deductibility of the 1964 contributions to the trust on two grounds: First, he contends that the petitioners are not entitled to the deduction because paragraph 16 of the trust provides that the contributions will be repaid to them by the trustees if the "Commissioner of Internal Revenue does not allow as a deduction for income and gift tax purposes * * * the value of the charitable remainder interest"; and, secondly, that even if the contributions are valid, the "complete management powers" given to the trustees (petitioners) prevent the deduction. Petitioners dispute both of these contentions.

We think respondent's first point is without merit and can be disposed of summarily. The adverse ruling issued by respondent was insufficient to meet the paragraph 16 test of disallowance for the reason that an advance ruling is not a disallowance of an amount subsequently claimed on a tax return. Under the plain wording of paragraph 16 the petitioners could not have claimed a return of the trust corpus if respondent had not subsequently disallowed their deduction upon an audit of their income tax return. But, on September 28, 1965, respondent sent a notice of deficiency to petitioners disallowing the claimed charitable deduction. While this action by respondent would seem to meet the literal meaning of paragraph 16, we are faced with our decision in *Surface Combustion Corporation*, 9 T.C. 631 (1947), affd. 181 F. 2d 444 (C.A. 6, 1950), where we held that a similar provision in certain employee trusts was not such a contingency as would prevent the employer from deducting his contributions to the trusts. In that case we stated (9 T.C. at 655–656):

We are thus faced with the paradoxical problem of how to treat compensation payments which would be deductible under section 23(a) unless precluded by a contingency within the control, not of petitioner or of its employees, but of the Commissioner of Internal Revenue. The contingency which is urged as a reason for us to hold the contributions in question are not deductible is the contingency that they may not, in the opinion of the Commissioner or of the courts, be deductible.

\*  \*  \*  \*  \*  \*  \*

If the contributions in question "were subject to be paid back to the corporation on the happening of contingencies within the control of the employees," their deduction would not be disallowed on that account. *Oxford Institute*, 33 B.T.A. 1136. If, on the other hand, the contingency was within the control of petitioner, the deduction of the contributions would be disallowed. See *Wilcox Investment Co.*, 3 T.C. 458.

In this case the contingency is within the control of the Commissioner of Internal Revenue, over whom petitioner obviously has no control and whose motives in the exercise or nonexercise of this contingent right obviously have no relationship to the desires or interests of petitioner or to the beneficiaries of the trusts. While there are no cases to our knowledge which are controlling authority on this precise question, we are of the opinion that the contingency under which petitioner might receive a repayment of the contributions should be treated as analogous to a contingency within the power of petitioner's employees and should not change the character of petitioner's payments to the trusts as present expenses of the corporation. * * *

It should be pointed out that the taxpayer has transferred the contributions from its own funds to the trusts; the trusts still exist and continue to hold the contributions, subject to the terms of the trusts; the petitioner is insisting that the contributions are deductible from its gross income and are therefore not recapturable by it; and that, if we hold herein that they are properly deductible and our holding is affirmed, any contingency is done away with and the possibility of the petitioner recapturing the contributions disappears.

We believe the same reasoning applies here. The fact that we are dealing with a different type of trust is of no particular consequence.

We are unwilling to find that the deduction claimed here fails because of the narrow wording of the trust instrument. The petitioners have a right to litigate respondent's determination and it was not necessary for them to reserve specifically their rights of appeal. There is no possibility of recapturing the contributions if they prevail in this litigation. Cf. *Meldrum & Fewsmith, Inc.*, 20 T.C. 790 (1953).

*Jones v. United States*, 252 F. Supp. 256 (N.D. Ohio 1966), cited by respondent, is inapposite. The issue in that case was whether a deduction for a charitable contribution was allowable where the gift could be defeated if the donor died prior to 1964. Since there was somewhere between a 6.8 percent and an 11.1 percent probability that the donor would not survive such period, the court held that the possibility was not "so remote as to be negligible" under section 1.170–1(e), Income Tax Regs. By contrast, the charities will eventually take under this trust instrument unless the petitioners are unsuccessful in this litigation.

We turn now to respondent's second contention regarding the broad management powers given to petitioners as trustees by the declaration of trust. Respondent rests his argument almost entirely on our opinion in *James L. Darling*, 43 T.C. 520 (1965), which we believe is clearly distinguishable on its facts. A close reading of the *Darling* case shows that any similarity between it and the instant case is superficial. In the first place, not only did the taxpayers in *Darling*

reserve substantially more powers over corpus than these petitioners, but also, having appointed their attorney as trustee, they did not have to exercise such powers in a fiduciary capacity. Secondly, the trust property in *Darling* was exchanged and title of the new property was taken in the names of the taxpayers as individuals. The trust property was mortgaged and all proceeds went to the taxpayers. In addition, the taxpayers were able to mortgage the new property without the joinder of the trustee. Obviously the *Darling* trust provisions were ignored.

If the petitioners had not made themselves the trustees, the issue confronting us would present little difficulty. But since the powers they granted to themselves as trustees are broad, and of the type ordinarily possessed by an independent trustee, close scrutiny is necessary.

The plain language of the trust instrument shows that a remainder is created solely for organizations qualifying under section 170 (c) (2). Gifts of remainder interests and of nonreversionary trust interests for the use of qualified charities are deductible. See sections 1.170–1 (d) and 1.170–2 (d), Income Tax Regs. The latter provision makes it clear that a gift subject to a reserved income interest is not a reversionary interest so as to be nondeductible under section 170 (b) (1) (D). That gifts of remainder interests in cash and land are deductible is firmly established. See 5 Mertens, Law of Federal Income Taxation, sec. 31.07 (1963).

It is equally clear that the trust itself does not have to be the type described in section 170 (c) (2) in order for gifts to it to be deductible. *John Danz*, 18 T.C. 454 (1952), affirmed on other issues 231 F. 2d 673 (C.A. 9, 1955) ; and *Denver & Rio Grande Western Railroad Co.*, 38 T.C. 557 (1962). The statutory words "for the use of" are synonymous with "in trust for," and a gift "in trust for" an organization described in section 170 (c) (2) is "for the use of" such an organization, even if the trust does not qualify under such section. See Rev. Rul. 57–562, 1957–2 C.B. 159.

Nor is retention by petitioners of the right to substitute other qualifying charities for those named in the trust instrument incompatible with deductibility. *Winthrop* v. *Meisels*, 281 F. 2d 694 (C.A. 2, 1960).

The grant of broad management powers to the trustees for the purpose of carrying out the trust, such as those contained in paragraph 14, have been held not to preclude a trust from being "organized and operated exclusively for" charitable purposes. See *John Danz Charitable Trust*, 32 T.C. 469 (1959), affd. 284 F. 2d 726 (C.A. 9, 1960) ; *William Waller*, 39 T.C. 665 (1963), acq. 1963–2 C.B. 5; and *Forest Press, Inc.*, 22 T.C. 265 (1954). If the trustees of an organization so organized and operated can have broad management powers, we see

594

no reason why the trustees of this trust cannot have similar powers if adequate safeguards exist.

There is nothing in the law that prevents trustors from appointing themselves as trustees. Neither is there anything in the Commissioner's regulations that makes such a provision onerous. However, as we have said previously, a close factual scrutiny must be made in such a situation.

The guidelines within which we must make our factual determination are set forth in section 1.170–1(e), Income Tax Regs.[3] The only "precedent event" here is the death of both petitioners, and such condition affects only the value of the charitable remainder. The possibility that an act may be performed or that an event will happen subsequent to a vesting of an interest in charity which could defeat such interest must appear to be "highly improbable." Although the trust is not a charity[4] as provided in the regulation, since "in trust for" is synonymous with "for the use of," we believe the "highly improbable" test applies here. The only event that could occur subsequent to the vesting of an interest in the trust to defeat its interest is set forth in paragraph 16, the effect of which we have already discussed.

Were the petitioners' powers as trustees so complete that they could perform acts rendering the corpus of the trust, and consequently the charitable remainder, valueless? We think not.

In *William Waller, supra,* we had before us the question of whether the broad management powers over a fund granted to the taxpayers as trustees, who were also the trustors, would prevent the fund from being organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes as required by sections 170 and 501. The Commissioner argued that since the taxpayers were the trustees the broad powers granted to them were inconsistent with an exclusively charitable or other exempt purpose. Our comment with respect to this argument was as follows (39 T.C. at 673):

---

[3] Sec. 1.170–1 Charitable, etc., contributions and gifts ; allowance of deduction.

(e) *Transfers subject to a condition or a power.* If as of the date of a gift a transfer for charitable purposes is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that the charitable transfer will not become effective is so remote as to be negligible. If an interest passes to or is vested in charity on the date of the gift and the interest would be defeated by the performance of some act or the happening of some event, the occurrence of which appeared to have been highly improbable on the date of the gift, the deduction is allowable. The deduction is not allowed in the case of a transfer in trust conveying a present interest in income if by *reason of all the conditions and* circumstances surrounding the transfer it appears that the charity may not receive the beneficial enjoyment of the interest. * * *

[4] We do not intend this language to be read as our conclusion as to the charitable or noncharitable nature of the trust. We mean merely that the trust has not been held to be a charitable organization by the Commissioner. The question of whether the trust is an exempt organization within the meaning of sec. 501 is not properly before us and, since our decision makes this question moot, it is unnecessary for us to consider it.

The trust instrument specifically provides that the purpose was to establish a fund or foundation to be operated exclusively for religious, charitable, scientific, literary, and educational purposes, and that the trust should be administered solely for one or more of such purposes. Accordingly, we think that the provisions to which the respondent refers must be read in the light of the overall purposes of the Fund, *and that it should not be assumed that the trustees would make distributions or loans in contravention of the overall purposes.* [Emphasis supplied.]

After considering the facts and reviewing some of the fund's activities, we went on to say (39 T.C. at 675) :

The respondent has also questioned provisions of the declaration of trust permitting the trustees to invest in property whether or not income-producing and whether or not of a wasting nature, and permitting them to hold securities or other property in their names or in the names of nominees with or without indicating their trust character. However, these provisions certainly do not indicate that the Fund was not organized exclusively for an exempt purpose. *Here again it should not be assumed that the trustees would act in violation of their fiduciary obligations.* It may be pointed out that in fact they as trustees did not invest in speculative properties and did not commingle property of the Fund with any property not belonging to the Fund. [Emphasis supplied.]

In the absence of any showing that the trustees (petitioners) have violated their trust, we will not assume they will do so. The trust agreement as a whole assures substantial protection for the charities. Paragraph 4 prohibits petitioners from invading, to maintain their standard of living, that part of the trust corpus attributable to inter vivos gifts made by either of them and paragraph 15 expressly limits the broad management powers set out in paragraph 14. Further assurance of the bona fide intent of petitioners is evidenced by their actions since the trust was created. Among these are: (1) Petitioners have established adequate reserves. (2) Their wills pour over almost their entire estates into the trust. (3) Separate double entry accounts are kept for the trust. (4) Petitioners are setting aside 10 percent of the farm income as a cash reserve to maintain the value of the trust's interest in depreciable assets, although they are entitled to the use of such income and include it in their own taxable income. (5) Petitioners have fully complied with all the terms of the trust. In short, we believe they have a genuine desire to benefit Texas charities. For years they have indeed woven this consistent pattern throughout the tapestry of their charitable giving.

There is another significant factor which fortifies our conclusion. The trust is a matter of public record and the attorney general of Texas is fully aware of it. The trust can be strictly enforced against petitioners by the attorney general. See *Boyd* v. *Frost National Bank*, 145 Tex. 206, 196 S.W. 2d 497 (1946). Texas law makes the attorney

general a necessary party to certain judicial proceedings involving "charitable trusts." [5]

The attorney general of Texas has filed an amicus curiae brief in this proceeding in which he has adopted the statements made by petitioners in their brief and has declared that the State of Texas is interested in the corpus of this trust being used for the support of its charities. Although we have no knowledge about his policy or method of policing "charitable trusts" during the lives of the trustors, we must take for granted that a trust, whose charitable remainder may well be worth in excess of $1 million upon the death of the life beneficiaries, will receive careful and periodic attention from the attorney general of Texas. His powers with respect to this type of trust are a substantial external guarantee that the petitioners will exercise their fiduciary duties strictly in accordance with the provisions of the trust.

On this record and in the light of respondent's regulations, we conclude that it is highly improbable that the petitioners in their fiduciary capacity will ever perform an act which will defeat the charitable remainders they have created in the trust. All of the conditions and circumstances surrounding the transfers of property interests to the trust persuade us that the named charities, or other qualified ones, will eventually receive the beneficial enjoyment thereof. Accordingly, we hold for the petitioners.

*Decision will be entered under Rule 50.*

---

[5] Tex. Rev. Civ. Stat. Ann. art. 4412a, provides in part as follows:

Art. 4412a.   Charitable trusts

\*       \*       \*       \*       \*       \*       \*

Section 1. As used in this Article, the term "charitable trust" includes all gifts and trusts for charitable purposes.

\*       \*       \*       \*       \*       \*       \*

Sec. 2. For and on behalf of the interests of the general public of this state in such matters, the Attorney General shall be a necessary party to and shall be served with process, as hereinafter provided, in any suit or judicial proceeding, the object of which is:

a. To terminate a charitable trust or to distribute its assets to other than charitable donees, or

b. To depart from the objects of a charitable trust as the same are set forth in the instrument creating the trust, including any proceedings for the application of the doctrine of cy pres, or

c. To construe, nullify or impair the provisions of any instrument, testamentary or otherwise, creating or affecting a charitable trust, or

d. To contest or set aside the probate of an alleged will by the terms of which any money, property or other thing of value is given, devised or bequeathed for charitable purposes.

\*       \*       \*       \*       \*       \*       \*

Sec. 6. It is the purpose of this Article to resolve and clarify what is thought by some to be uncertainties existing at common law with respect to the subject matter hereof. Nothing contained herein, however, shall ever be construed, deemed or held to be in limitation of the common law powers and duties of the Attorney General. Added Acts 1959, 56th Leg., p. 203, ch. 115.